RRYAN W. COLLIER, plaintiff in error, vs. THOMAS M. HARKNESS et al. defendants in error.

[1.] It is no ground for relief in a Court of Equity, that the vendee of real estate has got worsted in the contract. He must have been defrauded, and that, too, after using reasonable precaution on his part to guard against imposition.

[2.] A contract for the sale of land will not be set aside by the mere false assertion of the vendor as to the productiveness of the property, especially where no rescision has been applied for.

[3.] A *bona fide* purchaser, without notice, will be protected against the vendor's lien.

In Equity, in Butts Superior Court. Tried before Judge CABANISS, June Term, 1858.

In November, 1853, Bryant W. Collier purchased, from Augustus Cargile, then of Butts county, since removed from the State, three hundred acres of land, on which there was

a grist and saw mill, for which he agreed to pay him $8,000 as follows: One note for $2,000 payable 18th November, 1853; one note for $2,000 payable 18th November, 1854; one note for $2,000 payable 18th November, 1855, and one note for $2,000, payable the 18th November, 1856. The three first notes Collier paid at maturity. Thomas M. Harkness brought suit on the last note, and obtained judgment in the Inferior Court, from which Collier entered an appeal, pending which he filed his bill, alleging the above facts, and further, that he was induced to purchase said land; from the false representations of Cargile as to the value of the mills.

The bill also alleged that at the time of the sale, Cargile did not have a good title to the land, the purchase money not having been paid to Hartwell Tarver, from whom he bought it.

That Harkness, the holder of said note, was cognizant of these facts at the time he purchased said note from Cargile, and for which he paid but a nominal sum.

The bill prayed for an injunction to restrain and enjoin Harkness from prosecuting the common law suit; and that he might be allowed a reasonable deduction from the amount of the purchase money agreed to be paid for the land, on account of the deficiency in said mills.

The defendant, Harkness, filed his answer, stating that at the time of the sale of the premises by Cargile to Collier, he had title to all the land except from about thirty to seventy acres of the land which he had bought from Hartwell Tarver; and on this part of said tract of land, the mills are not situated.

The defendant came to the possession of the note by his intermarriage with his wife, who had the note at the time, and which was not due, and for which she had paid Cargile a fair and valuable consideration.

At the hearing of said bill and answer, the Court dissolved the injunction, and counsel for complainant excepted.

BAILEY, for plaintiff in error.

LYONS & BOYNTON; and PEEPLES, *contra.*

*By the Court.*—LUMPKIN J. delivering the opinion.

Harkness obtained judgment against Collier on a note for two thousand dollars. An appeal was entered, and pending the appeal, a bill has been filed, praying an injunction against the common law action. Collier amended the bill, making Mrs. Harkness a party. Harkness answered the bill, and moved to dissolve the injunction; which motion was granted, and to this order Collier excepts. Amongst other things, Collier complained that the injunction should not have been dissolved until Mrs. Harkness had answered the bill.

To obviate all difficulty on this account, as well as to relieve the case from the supposed equities in favor of attaching upon the note in the hands of Mrs. Harkness and of her husband, Harkness, we propose to treat the case as though the suit had been brought by Cargile, the payee, against Collier, and the bill had been filed by Collier against Cargile. This simplifies the case very much, and is conceding all that Collier can ask. What, then, would be the equities between the original parties?

The bill, in substance, charges that Cargile misrepresented the profits of the mill, which was the main inducement to make the purchase; and that the complainant has been disappointed in not realizing from it as he had expected to do, the means to meet the payment of the purchase money. We are satisfied that the allegations in the bill do not amount to such a fraud in the sale of real estate as would entitle the purchaser to relief. That the mills are not as profitable under the management of Mr. Collier as he anticipated, does not necessarily show that there was deceit practiced in the sale of this property. Mr. Collier's business is taverning, not milling. And it is quite likely that he is the best customer of his own mill, without crediting it with all that he

consumes.   Our people are somewhat given to bragging.   It is a national characteristic; and no wonder—for they have much to be proud of.   It will not do to scrutinize their idle boastings too closely.   No one is misled by them, for no one, unless he be decidedly verdant, believes all or even one-half that is said as to the value or productiveness of property.   Mr. Collier does not aver very strongly that he was the dupe of his overweening confidence in Cargile.   In the sale of property, especially of real estate, which may be seen of all men, the law imposes a duty upon the vendee as well as the vendor.   And it refuses assistance to those who have it abundantly in their hands to take care of themselves.   Every one who is, *sui juris,* capable of contracting and being contracted with, is his own guardian.   And *caveat emptor* is the well settled doctrine of the old common law.   Chancellor Kent may well regret that it had not been adhered to.   2 *Kent's Com.,* 485.   It would have saved the Courts and the county immense trouble.

But this is not the gravamen of this bill.   The main ground upon which relief is sought is on account of the incumbrance or cloud hanging over the title of this property. In response to the allegations in the bill, the answer states fully the facts in this respect.   And what are they?   That between thirty and seventy acres only of the land were bought by Cargile of the late General Tarver, and that the mills are not on this portion.   And even the bill states that since Collier bought, he has heard that the estate of General Tarver threatens to enforce the vendor's lien for the unpaid purchase money.   And it is from this quarter the bill charges that danger is apprehended.

If Mr. Collier has only heard this *since he bought,* he is in no peril.   Being *bona fide* purchaser, without notice, he is protected, of course, against this vendor's lien, even if it existed, upon any portion of the land as against Cargile.

Suppose it were otherwise, the injunction should only be continued in any view of it for the protection of Collier to

the value of the small strip of the land purchased of General Tarver, and the balance of his note he ought to pay. At any rate, the plaintiff should not be restrained from collecting it. But there is no sufficient reason for retaining the injunction at all.

Consequently, we affirm the order of the Circuit Court.