STEPHEN R. DUNAGAN *et al.*, plaintiffs in error, *vs.* BENJA-MIN DUNAGAN *et al.*, defendants in error.

1. Receipts for money are always only *prima facie* evidence of payment, and may be denied or *explained* by parol.
2. When a bill of exceptions is filed and error assigned on the rulings of the Judge of the Superior Court on the trial of a cause, the bill of exceptions and the assignment of error must show distinctly the points decided, with such statement of the facts as are necessary to an understanding of the points made, and if the bill of exceptions fails to do this, this Court will not pass upon the rulings complained of.
3. It was not error in the Court to refuse, on the facts of this case, the new trial asked for, nor was the charge of the Court under the facts as they appear on the record, and the certificate of the Judge sufficient ground for a new trial.

Parol evidence. Motion for new trial. Before Judge DAVIS. Hall Superior Court. September Term, 1868.

In October, 1837, Benjamin Dunagan gave bond as the administrator of the estate of Ezekiel Dunagan, deceased, with Isaiah Dunagan, James J. McCleskey and David G. Eberhart, as his securities. McCleskey, as guardian of Stephen R., Daniel C., Levi J., and George W. Dunagan, minor heirs and distributees of said estate, filed a bill for account against said administrator and, on the 22d of March, 1849, obtained a verdict for his wards, as follows: $205 37 for said Stephen, and $383 00 for each of the others, and costs. Judgment was entered for the total sum of $1,737 37, and a *fi. fa.* was accordingly issued on the 5th of April, 1849. On the next day the deputy sheriff made upon it a return of *nulla bona*. On the 25th of June, 1849, it was levied upon the undivided half of lot of land No. 236, 12th district and 3d section of said county. In August, 1849, said levy was dismissed by plaintiff's order, and on the same day it was levied upon certain fifty acres of said lot. On the 6th of November, 1849, said fifty acres were sold by the sheriff and bought by McCleskey for $135 00. After paying costs, the proceeds of said sale, $129 08, were credited on the *fi. fa.* It was then levied upon a horse; he was sold and thus another credit of $30 75, was put upon the *fi. fa.* In Sep-

tember, 1851, there was another return of *nulla bona.* In January, 1856, it was levied on certain land whereon the defendant then lived, and in July, 1857, it was levied on land whereon he then lived.   In September, 1857, the sale under the January levy was postponed by plaintiff's consent; the July levy was disposed of by some one filing a claim to the land last mentioned.

. Afterwards (it appears), Stephen R., Daniel C., Levi J., and George W. Dunagan and J. R. McCleskey sued said administrator and his securities on said bond. The plea was payment of the *fi. fa.*   At the trial, plaintiff's counsel read in evidence the bond, the bill and decree, the *fi. fa.*, with said entries thereon and closed.

The defendant, being on the stand as a witness, was presented with certain receipts, and they were read in evidence, accompanied with his explanations, as follows:   A receipt by J. R. McCleskey to said administrator, as such, for $250 00, dated the 25th of December, 1857, and being for the balance in full of McCleskey's interest in said estate in right of his wife, formerly Mary Jane Dunagan; the defendant said McCleskey had bought one-half of the interest of Levi J., and Daniel C. bought the other half, and that this receipt was in full of that half interest also.   A receipt dated 26th of October, 1852, for $500 00 signed by Daniel C., Levi J., George W. and Margaret Dunagan, to be credited on said *fi. fa.;* the defendant said that that sum was in gold, and was to go to Daniel C. and George W.   The bill of exceptions recites as follows:   " The defendant then introduced J. Gray's receipt for a note on Margaret Dunagan and James J. McCleskey, for $213 00, dated prior to the judgment, which was ruled out, when defendant testified that the money of said note could not be taken out of the hands of the guardian, that it must remain there for the benefit of the orphans.

The defendant introduced an order from George W. Dunagan, dated July 18th, 1861, acknowledging to have sold the little Georgia claim for $250 00, $33 33 down, the balance on time, and also, had collected the Duncan claim, (the amount of which does not appear), and testified in relation to said

gold mine claim, and that the same should be $450 00. The defendant then introduced a receipt from Daniel C. Dunagan for $31 00, dated June 20th, 1850."

Counsel for defendant then offered the bill of advancements made by intestate while in life, to which counsel for plaintiff objected, when defendant testified that James J. McCleskey promised to pay him the $60 00, (the amount of advancements); he stated that it was for a mare given his (McCleskey's wife) upon their marriage many years before, which was to be credited upon the decree; that there were various other matters of payment which he could not now remember, and for which he had no receipts, but that said decree was paid off in full. He further testified that Stephen R. Dunagan was paid off soon after the judgment was rendered, that he (witness) loaned about $200 00 to his brother Joseph Dunagan, and that he paid it to Stephen R., to pay Dr. Banks for the land he (Stephen R,) purchased of Dr. Banks.

*Crossed.*—He was not present, but understood he so paid it, and he repeated, generally they were all and each of them paid off in full; that Daniel C. Dunagan was paid by loaning him with George $500 00 to go to California; that Levi's claim belonged to J. R. McCleskey and D. C. Dunagan; that George W. Dunagan was paid by the claim in the Rocky Mountain country; that Stephen Dunagan went to Alabama, then to Arkansas, some ten or twelve years ago; that Daniel C. Dunagan went to California about sixteen years ago, and had not returned; that Levi J. Dunagan left this country about the same time as Daniel C. Dunagan; that George W. Dunagan went to Alabama some ten or twelve years ago; that none of the above plaintiffs have ever troubled him since about his owing them anything since they left this country.

On cross-examination he stated: He could not remember any transaction, time or place when he paid plaintiffs anything, except what he had already stated in his direct examination; that the sum of money he loaned his brother Joseph Dunagan, was about $200 00; that the payment to J. R. McCleskey, was made some time after the claim was in E. M. Johnson's hands, and he stated that E. M. Johnson had been

pressing him ever since, and that Colonel Johnson said that he (Dunagan) ought to have paid the money to him instead of to J. R. McCleskey, and said that McCleskey said that he was sorry that he had ever taken the administration out of his hands, for that he had never received anything from J. J. McCleskey, who was the guardian of his wife.

Plaintiff, in rebuttal, introduced an order from G. W. Dunagan, from Colorado, asking Johnson to allow defendant $200 00 in settling with the heirs of deceased, for that he, G. W., had that much of defendant's money.

THOMAS LITTLE testified: That Stephen R. Dunagan left this country in 1857; that previous thereto, he (witness), went with said Stephen R., to see Dr. Banks, to buy said land; that only about $60 00 was paid on said land; that he did not buy it, and Stephen R., sold it to C. Q. Chandler, who gave his notes for the land; that he (witness), then and there bought the claim of Stephen R. Dunagan, and has been preserving it ever since, and has not received anything.

Defendant's counsel then proposed to make said Thomas Little a party in the place of said Stephen R. Dunagan, and he, Little, refused to become a party.

On cross-examination, Little stated that he gave Stephen R. Dunagan for his claim, two mules, and that all he knew about Stephen R. Dunagan's claim he learned from Stephen R. Dunagan himself; that Stephen told him that his claim amounted to about $450 00.

The testimony, so far as the sayings of Stephen R. Dunagan in his own favor, were concerned, was ruled out.

The Court charged the jury as follows: The suit was brought on an administrator's bond which was given to the Inferior Court, which at the time, was the Court of Ordinary. The question for them to determine was, had there been a breach of the bond. The plaintiffs contended that there had been a breach of that bond in failing to pay a certain decree which the plaintiffs in that action had obtained against B. Dunagan, the administrator of Ezekiel Dunagan; that from the evidence, they must determine whether there had been a breach of said bond. It was charged that they could not go

behind that decree in allowing credits in favor of the defendant in that decree. As to the execution issued on that decree which was in evidence, various entries had been made.

The Court then stated that in order that the jury might understand, he would state, the difference in levies on personal estate, and levies on real estate undisposed of; that the levy of an execution on personal property is a satisfaction of a judgment, so far as to throw on the plaintiff the burden of proving either that it was insufficient, or that its proceeds were applied to the extinguishment of prior liens, or that it was otherwise unproductive and made so without fault in the plaintiff or the levying officer. A levy on personal property sufficient to pay the debt, which is dismissed by the plaintiff with the consent of the defendant, extinguishes the judgment, so far as third persons may be affected by it. A levy on real estate is not *prima facie* evidence of satisfaction, and although unaccounted for, does not extinguish the judgment. You will determine, from the evidence in this case, upon which kind of property the levies are made, and apply the rules of law, according as you shall determine from the evidence upon which species of property the levies have been made.

The Court further charged, that any act of the plaintiffs in that decree which injures the securities on the bond sued on, or exposed them to greater risk or worked an injury to them, will exonerate the securities; that the making a contract by the plaintiffs in the decree, with the defendant Benjamin Dunagan, if it would produce the above effects, and if done without the knowledge or consent of said securities, would relieve them from their liability on the bond sued on. The jury would determine from the evidence in the case, whether anything had been done between the plaintiffs and said Benjamin Dunagan that had produced any of the aforesaid results, without the consent of the above named securities on said bond; that the granting mere indulgence would not liberate the securities. It was also charged that all the witnesses stood fair before them unless impeached, but that they

were to judge of their credibility, and had a right to take into consideration their relations to the case.

The jury retired, and returned with a verdict in favor of defendant.

Whereupon, during the same term of the Court, counsel for plaintiffs moved the Court for a *rule nisi*, calling on the defendant to show cause why a new trial should not be granted upon the following grounds, to-wit:

1. Because the Court erred in permitting the witness B. Dunagan to explain, enlarge and contradict the written evidence, which were receipts and an order.

2. Because the Court erred in permitting the defendant B. Dunagan, to give in evidence that said judgment was paid off in full, without giving any facts to support it, etc.

3. Because the Court erred in allowing the defendant, B. Dunagan to give in evidence, that the amounts of the note given by Margaret Dunagan and James J. McCleskey, and the advancements made by intestate while in life, were to be credited on said decree and judgment after the same (that is the writings) had been ruled out.

4. Because the Court erred in charging the jury that they must determine by their verdict, whether any levy was made on the *fi. fa.*, and unaccounted for, sufficient to satisfy the debt or discharge the sureties. Also, that they must determine whether any contracts were made between plaintiffs and defendant sufficient to exonerate the sureties.

5. Because the verdict is contrary to the charge of the Court; contrary to the evidence, to law and equity.

The Judge refused a new trial and error is assigned on each of the grounds for new trial. In certifying, the Judge says that he decided "that receipts only are an exception to the rule of evidence, that parol evidence can not be given to vary, add to, or substantially contradict a written instrument; there was no objection raised to Benjamin Dunagan's testifying, when he gave his testimony about the writing called in the first ground of the motion for a new trial, an order; exception was taken that Benjamin Dunagan could not prove payment of the decree, simply by swearing, in a general way,

that payment had been made, the Court decided that he might be questioned fully, in detail, how, when, and where the payments were made, and he was so examined, both on his direct and cross examination. The reason why the charge. was given as it was, in regard to the securities on the administrator's bond, was because defendant's counsel contended, in argument before the jury, that the securities were exonerated."

E. M. JOHNSON, for plaintiffs in error.

JOHN GRAY, for defendants in error.

McCAY, J.

1. A receipt for money is, as a general rule, an exception to the principle that parol evidence is inadmissible to explain or contradict a writing, (Code, section 3754; 1 *Kelly*, 18; 3 *Kelly*, 215.) Unless it also be a contract, *Sullivan vs. Cox*, 7 *Ga.*, 144. This is a receipt for money, and under the rule, we do not think the defendant was concluded, by the fact that he accepted it, from showing in the first place, the independent fact that the signer of the receipt was the owner of part of another share, and secondly, that the five hundred dollars was in full of that share also. Why does not this come within the exception as to receipts?

As to the point that the Court permitted the defendant to show that one of the plaintiffs had an advancement, during the life of the testator, and which was not taken into account in the equity case, and that, after the judgment, he had agreed it should be accounted for by him, we see no error. In the first place, this equity decree is only *prima facie* binding on the securities, they may go behind and show that it was not a correct adjustment. *Bryant vs. Beall*, 1 *Kelly*, 357; *Bradwell vs. Spencer*, 16 *Ga.*, 581. It was competent, too, even for the defendant to show a *subsequent* agreement, to lessen the judgment, in consideration of the error in not taking the advance into the account. *Rodgers vs. Atkinson*, 1 *Kelly*, 18.

2. There are one or two other errors assigned, growing out of the admission of parol evidence by the Court, which we confess ourselves unable, from the record, to understand. The Code requires, that the bill of exceptions shall plainly and distinctly specify the decision complained of, and if, from carelessness or haste, parties fail to make such a case as that, this Court can clearly understand what has been done, and how the party complaining has been injured; it would be but groping in the dark, perhaps unjustly, to the Judge below and the parties, to undertake to adjudicate the matter.

3. We see no error in the charge of the Court, taken in connection with his certificate, of the ground taken by the defendant's counsel in his argument before the jury.

The Judge charged that the jury could not go behind the decree. This was a stronger charge for the plaintiffs than they were entitled to against the securities, if there was any evidence to justify them in so doing, 1 *Kelly*, 357. The charge of the Judge in reference to the entries on the *fi. fa.*, and in reference to the effect of indulgence, was in reply to the argument of the defendant's counsel before the jury, and was proper, under the circumstances. It was competent for the defendant to be permitted to state, in broad terms, that the decree was fully paid. He was open to cross-examination by the plaintiff, and to contradiction, and it was a question for the jury to determine, whether the whole evidence did or did not show his statements to be correct. Here was a very old claim; the evidence clearly showed many and complicated transactions between the parties. The truth of the case turns very much upon the truthfulness of the defendant. Of that, the jury was the judge, and we do not think the verdict ought to be disturbed. The jury and the Court below, have given it for the defendant and we will not interfere.

Judgment affirmed.