STEPHEN KING, plaintiff in error, *vs*. THE STATE OF GEORGIA, defendant in error.

1. An indictment for bigamy must allege that the first marriage was lawful, or set forth such facts as will amount to such an allegation.
2. The Act of March 7, 1866, (Code, 1665,) confirms, for all civil purposes, the marriage of persons of color, living together as man and wife at the date of the Act, and if, after said Act, such persons continue to live together as man and wife, it will be bigamy for one of them to marry a third person, knowing that the wife or the husband, thus made by said Act a lawful wife or husband, is still living, and is still the lawful wife or husband.

Bigamy.  Criminal Pleading.  Negroes.  Before Judge HARRELL.  Webster Superior Court.  September Term, 1869.

The indictment in this case was as follows:  *  *  "For that the said Stephen King," (who was averred to be "colored,") "on the 9th day of March, in the year 1866, in the county aforesaid, did then and there marry one Nancy Moreland, (colored,) and her, the said Nancy, had to his wife, and the said Stephen King afterwards, and while he was so married to said Nancy as aforesaid, to-wit: on the 18th day of August, 1669, in the county aforesaid, knowingly did marry and take to wife one Henrietta Grubbs, (colored,) and to her, the said Henrietta Grubbs, was then and there married, the said Nancy, his former wife, being then alive, of which fact the said Stephen King had then and there full knowledge, contrary," etc.

This indictment was demurred to, and the demurrer was overruled.  The State showed, by one witness, that Stephen King and Nancy Moreland, in 1864, took each other by the hand, in presence of witnesses, and said they were husband and wife ; that at the end of the war he left her, and remained away till January, 1866, when he went back, and took her with him to one Ward's, and lived with her there; that he slept with her while there, but did not recognize her as his wife more than he did the other women ; that at the end of the year Stephen paid her for washing for him, as did witness pay her for washing for him.  Another witness testified that she left the defendant in December, 1865, that defendant went to her, and they had "a big fight." The sheriff testified, that after his arrest defendant told him that he left Nancy year before last, and that before he married Henrietta Grubbs, he conferred with a Justice of the Peace, who told him that he did not know that he could be punished if he married again.  His second marriage was proved by his admissions.

His counsel objected to the evidence of his first marriage, upon the ground that it was not a lawful marriage, defend-

ant being then a slave, and to the evidence of cohabitation since the war with Nancy Moreland, because the Act of March 9th, 1866, could not make, by such cohabitation, said Nancy defendant's lawful wife. These objections were overruled, and defendant was found guilty. Error is assigned upon overruling said demurrer and said objections to the said evidence.

HAWKINS & BURKE, T. L. CLARKE, for plaintiff in error, cited Acts of 1865-6, page 240; Acts of 1866, page 156.

S. W. PARKER, Solicitor General, F. H. PRITCHETT, by A. HOOD, for the State, relied upon Act of 9th March, 1866.

McCAY, J.

There was a demurrer to the indictment in this case, because it did not allege the first marriage to be a lawful marriage, and because it failed to allege that at the time of the second marriage, his said *lawful* wife was, within his knowledge, in life.

1. A necessary ingredient of the crime of bigamy is that at the time of the second marriage the defendant shall have a *lawful* wife living. If the first marriage were, for any cause, void, or if the defendant has been divorced *a vinculo matrimonii*, the second marriage is not bigamy. As this is a material fact, and expressly included by the statute in the description of the crime, we think it ought to be alleged. This very case shows the propriety of it. The whole case turns upon whether certain proven facts constitute a *legal* marriage, or rather, cast upon the defendant, by operation of law, a marriage, a lawful marriage, when the indictment simply charges that on a certain day he married one Nancy Moreland. We think the demurrer to the indictment good. Every fact stated therein may be true, and the defendant may be not guilty, simply because the first marriage may not have been lawful.

2. It was argued that the Act of 1866, declaring persons of color man and wife, who were living together as such at

King *vs.* State of Georgia.

the date of the Act, does not cast upon such persons a marriage so as to make them liable to *indictment* for contracting, subsequently, another marriage.  Without doubt the case of colored people is peculiar.  Until June, 1865, they were in fact slaves, they could make no legal contracts of any kind, and there would be gross injustice in a law declaring all marriage contracts made while they were slaves, valid.  But when the Act of March, 1866, was passed, they had been free in fact eight or nine months, and by the strict rules of law had been during that period free and able to contract.  Why were not their contracts of marriage made during that time valid as well as other contracts which they might make ?  It is true, that under the peculiar circumstances surrounding them, a moralist will not judge them harshly, and it is perhaps a wise public policy not to inflict upon them severe penalties for failing, as in most instances they did, to comprehend the sacredness of the marriage tie.

It will be noticed that the Act of March, 1866, does not specifically refer to *actual* marriages of colored people, but declares that all who, at the date of that Act, were living together as man and wife shall be so considered.  There were, doubtless, may instances, and it is honorable to the colored people to declare it, of persons who, without any law of man to enforce it, had been true to the vows they had made to each other to be man and wife when slaves, and when the boon of freedom came they still adhered to the relations they, had formed.  To such persons a mere formal contract of marriage was not only unnecessary, but degrading, and it was an act of justice and wisdom in the Legislature to provide a law settling any doubts there might be of the legality of such relations.  But there were also a large number of cases among slaves where the marriage tie was very loose.  It had not the sanction of law ; and circumstances, inevitable in in their character, made it liable to many interruptions, and when freedom was cast suddenly upon the race, it is not strange that for some time both men and women should cohabit under circumstances where it was very doubtful what was the true relation which they proposed to occupy to each

King *vs.* State of Georgia.

other.   They might be man and wife, they might be living together immorally.   Under the circumstances it is unfair to hold them criminally liable for acts in violation of the implied contract thus apparently existing.   The Act of 1866 was passed to cure the evils we have referred to, and after much reflection upon the evils it was intended to remedy, upon the words of the Act, and the principles of criminal law, our judgment is that this Act confirms and legalizes, for all civil purposes, the marriages of persons of color living together at the date of that Act.   But if, on the publication of that Act, such persons should immediately have ceased to live together as man and wife, we do not think it would be bigamy in one of them to contract a subsequent marriage. If they, however, continue, after the passage of that Act, to to live together, so as to raise an implied assent to the contract thus cast upon them, it will be bigamy to marry a third. The essence of the crime of bigamy is the marrying of a third person by one who has a lawful wife living.   After accepting, by continuing to live together, the terms of the Act of 1866, the marriage is complete for all purposes, and it is criminal to contract another.   What kind of living together, and how long, must depend upon the facts of each case.

Assuming, as we must, that everybody knows the law, the question must turn upon the conduct of the parties.   Is it such as fairly leads to the conclusion that they *bona fide* recognize each other as man and wife?   If they have continued to do so after the passage of this Act, it will be criminal to marry again.

Judgment reversed.