## DUKE *et al.* v. BROWN, ordinary, for use, etc.

1. Whenever an ordinary in whose office there has been filed a bond given under the provisions of the Penal Code, § 388, to stop a prosecution for seduction, is informed, or knows, that the principal obligor has failed to comply with the conditions of the bond, it is his duty to immediately begin suit thereon.

2. In such a suit if it be shown that there has been a breach of the bond, the recovery shall be for the full amount stated in the bond, and the "judgment shall remain open and be subject to be appropriated" by the ordinary "from time to time as the situation and exigencies" of the wife and her offspring may require.

3. A failure or refusal on the part of the principal obligor in such a bond to support and maintain his wife, or her child, at any time within the term of five years from the date of the marriage, will constitute a breach of the bond, and suit may be immediately brought thereon.

4. The undertaking of the principal obligor and the securities in such a bond is not at all dependent upon the conduct of the female after the marriage. He must maintain and support her and her offspring for the period fixed in the bond, without reference to her conduct.

5. That the marriage contract was entered into in consequence of a fraud perpetrated upon the alleged seducer would not constitute a defense to an action on the bond; certainly not unless it be alleged that the marriage had been annulled and set aside in a direct proceeding for that purpose.

6. Whether a divorce and permanent alimony granted at the instance of the wife, on account of misconduct of the husband, would discharge the obligation of the bond, is a question not involved in the present case.

7. The institution of a suit for divorce by the wife, and the fact that one verdict for divorce has been obtained as well as a decree for temporary alimony, does not constitute a defense to an action on the bond.

8. The payment of temporary alimony in a sum less than an amount sufficient for the maintenance and support of the wife and offspring would not be a defense to an action on the bond.

9. After judgment in the suit on the bond the ordinary should take into consideration any amounts paid by the husband, either voluntarily or otherwise, in determining how much of the judgment should be appropriated to the support of the wife and offspring.

10. If at the expiration of five years from the date of the marriage the female and her offspring have been maintained during that period according to their "situation and exigencies," and any part of the judgment on the bond remains uncollected, or, if collected, unexpended, it would seem that the principal obligor or his sureties would be entitled to have the judgment marked satisfied and the unexpended balance returned.

11. Even if surplusage in a petition is a defect which can be taken advantage of by demurrer, the failure to strike such matter on demurrer will not require a reversal in the case, where no evidence was offered to support the allegations alleged to be superfluous, and where, independently of such allegations, the petition set forth a cause of action and the evidence demanded a finding in favor of the plaintiff.

12. The rulings complained of which are not above dealt with were free from error. The evidence demanded a finding in favor of the plaintiff for the amount sued for, and the court did not err in directing the jury to return a verdict to that effect.

Argued April 5, — Decided April 25, 1901.

Action on bond. Before Judge Janes. Carroll superior court. October 17, 1900.

This was an action by the ordinary, for the use of a wife and her minor child, against her husband and his sureties on a bond for the maintenance of the wife and child for five years, given under the Penal Code, § 388, to stop a prosecution for seduction. The petition alleged that the husband, with threats and blows, drove the wife from his home, that they had since remained in a state of separation, and that he had not contributed to her support and that of the child. The bond was made in 1898, and the suit was brought in 1899. The defendants demurred on the ground that no cause of action could exist until after the expiration of five years from the date of the bond. An allegation of the petition that, on a public trial since the separation, the husband made certain false charges as to the wife's conduct before their marriage, was demurred to, because what was done after the separation could not illustrate the liability of the defendants, and because what was said on a public

trial was privileged matter.  An allegation that there had been a breach of the bond as to every condition except that of marriage was demurred to, because it stated merely a conclusion.  The demurrer was overruled.  The husband filed a plea in which he denied the allegation that he had not contributed to the support of his wife and the child, and set up that the marriage was induced by her fraud in falsely representing to him that he was the father of the child, with which she was pregnant; and that by reason of the fraud the marriage was void; that the separation was not on account of any maltreatment by him, but was voluntary on her part, and was for the purpose of collecting money on the bond; that while they were living together she was guilty of misconduct in various respects specified; that she had brought a suit against him, which was still pending, for a total divorce and for both temporary and permanent alimony, and had obtained a decree for a certain sum as temporary alimony; and that by electing to sue for alimony she waived the right to recover on the bond, as she could not recover alimony and also recover on the bond.  Afterwards there was an offer to amend the plea by alleging that, since the filing of this suit, the wife had obtained a first verdict for a total divorce, and therefore was not entitled to recover.  The court disallowed the amendment, and on demurrer struck the plea.  The demurrer was on the ground that the plea "admitted that defendant had not supported or contributed to the support of plaintiff's usees since the separation or before."  A similar plea by the sureties, as well as one claiming that their risk had been increased by the conduct of the wife in leaving the husband without cause, was demurred to generally, and the demurrer was sustained.

A motion by the defendants for a continuance because one of them, without whose presence his counsel could not safely go to trial, and who would prove, in behalf of himself and the other defendants, that the wife was the cause of the separation, and that the husband treated her well, was overruled, and the case proceeded to trial.  The bond was introduced in evidence, and the wife testified to the marriage and the separation, that the separation was caused by the fault of the husband, and that he had never contributed anything to her support, except ten dollars on temporary alimony.  The court then directed a verdict for the amount of the bond, after stating that fraud in the procurement of the marriage,

voluntary abandonment by the wife, recovery of alimony, a first verdict of divorce, or misconduct of the wife would not constitute a legal defense, and that no evidence would be permitted in support of any of these grounds of defense; that there could be but one defense to the bond sued on,—payment or the voluntary support by the husband of the usees in the bond. The defendants excepted, assigning as error each of the rulings stated.

*S. Holderness*, for plaintiffs in error
*Reese & Gordon*, contra.

COBB, J. 1, 2. The law of this State has for many years provided that a prosecution for seduction may be stopped at any time by the marriage of the parties. Prior to 1893, simply entering into the marriage contract in accordance with the formalities provided by law was all that was necessary to stop the prosecution. The public offense was allowed to be condoned, for the reason that the seducer had in this way made all reparation in his power to the female whom he had injured, and had assumed an obligation a compliance with which it was supposed would save the woman and her offspring from becoming a charge upon the public. In time, however, it was demonstrated that in many cases—it might be safe to say, in nearly all—the seducer who availed himself of the privilege of marriage given by law did so without any intention of complying with the obligation imposed by the marriage vow, but for the sole purpose of releasing himself from the toils of the law; and, once released, left his victim and her offspring without pretending to provide in any way for their maintenance, often going beyond the limits of the State for the express purpose of avoiding the obligations imposed by the marriage contract. In order to remedy the defect in the law, the General Assembly in 1893 passed an act which declared that the marriage of the parties should not have the effect of stopping the prosecution, unless "the seducer shall, at the time of obtaining the marriage license from the ordinary of the female's residence, give a good and sufficient bond in such sum as said ordinary may deem reasonable and just, taking into consideration the condition of the parties, payable to said ordinary and his successors in office, and conditioned for the maintenance and support of the female and her child or children, if any, for the period of five years. If the defendant is unable to give

the bond, the prosecution shall not be at an end until he shall live with the female, in good faith, for five years." Penal Code, § 388, Acts 1893, p. 39. It was also provided in the same act that "The bond, when so executed and approved by the ordinary, shall be filed in his office and recorded on his minutes, and upon the failure of the defendant to comply with its terms, suit may be brought thereon." Penal Code, § 389. A provision of this character in the law relating to seduction seems to be peculiar to the law of this State. In our investigations we have been unable to find anything like it in the law of any other State of the Union or of any other country. The only provision of our law at all analogous with it is that requiring the father of a bastard "to give security for the maintenance and education of the child until it arrives at the age of fourteen years." Penal Code, § 1250. The bond required to be given in such case is payable to the ordinary of the county in which the female resides. When taken it is filed in his office, and if the child becomes chargeable to the county, it is the duty of the ordinary to institute an action upon it, and the judgment, if in his favor, shall be for "the full amount of the bond, which judgment shall remain open, and be subject to be appropriated by the courts, from time to time, as the situation and exigencies of the bastard child may require." Penal Code, §§ 1248, 1253, 1254.

While the analogy between the proceedings fails at some points, the similarity in other particulars is such that a consideration of the bastardy law is helpful in arriving at the intention of the General Assembly in passing the act under construction. In each instance the father is required to give security for the maintenance of his offspring, in the one case expressly for the purpose of relieving the county; in the other, while this is not expressly declared to be one of the reasons for requiring security, it is naturally to be inferred from the fact that the officer upon whom is generally imposed the duty of seeing to the care of persons chargeable to the public is the payee in the bond as well as the custodian of the paper, and therefore the one whose duty it is to enforce the collection of the penalty in the event of a breach. The bond is in each case given to the ordinary of the county where the female resides. So far the analogy between the two provisions is perfect. It fails at the point where the bond required in cases of seduction provides for the maintenance of the mother as well as of the child. There

seems to be, however, a very good reason for the difference, for a man is under a legal obligation to support his bastard child, but there is no legal obligation upon him to maintain its mother; though if he marries her, then he assumes a legal obligation to support her, not because she is the mother of his child, but because she is his wife. Suppose it be conceded, however, that the bond in cases of seduction is not required for the protection of the public, but solely for the benefit of the wife and child or children, the fact that the bond is payable to a public officer and required to be filed in a public office constitutes a sufficient reason for looking to the remedy provided in other cases where bonds for maintenance and support are required to be made payable to the same officer and filed in the same office, when there is nothing in the act under consideration distinctly declaring what shall be the remedy allowed. In bastardy proceedings the ordinary is not only charged with the duty of bringing suit on the bond whenever the condition is broken, but also with seeing that the judgment obtained is enforced, from time to time, for such amounts as "the situation and exigencies of the bastard child" require, until the whole amount is collected, if so much is necessary. There was some reason for making the bond in seduction cases payable to and enforceable by the ordinary, and it must have been one similar to that which prompted the General Assembly to select the ordinary as the payee and custodian, not only of the bond, but of the proceeds of the judgment thereon in bastardy cases. If in either case the whole amount of the bond were collected and paid over to the mother of the child, it is more than probable that the fund would be wasted and dissipated, whether the custodian of the fund be the depraved mother of a bastard, or the deserted and desperate wife of a seducer. The conclusion arrived at by us is that it was the intention of the General Assembly that, upon the breach of the bond given by a seducer upon his marriage with his victim, it is the duty of the ordinary to bring suit on the bond, and upon proof of a breach of the same he is entitled to recover the full amount stated in the bond, the judgment, as in cases of suits on bastardy bonds, to "remain open and be subject to be appropriated by the courts from time to time as the situation and exigencies" of the wife and children may require.

3, 4. The undertaking of the seducer in the bond which the law permits him to give is to provide "for the maintenance and support

of the female and her child or children, if any, for the period of five years." He is given his choice between the penitentiary and the contract. If he elects to enter into the contract instead of the penitentiary, he must not forget that he has purchased his liberty at the price of the undertaking; and he should not complain when the State, through its officers and courts, compels him to pay the money penalty which he has been permitted to assume in lieu of a term of penal servitude. The obligation of the bond is independent of any obligation growing out of the marriage contract. Under the marriage contract the parties owe each other reciprocal duties, and the failure of one to discharge such duties is, in some cases, a good excuse for a refusal on the part of the other to comply with the duties devolving upon him or her, as the case may be. All such questions, however, can have no place in an investigation dealing solely with the question of liability on a contract of the character involved in the present case. The undertaking is, as has been said, to provide a support for the female and her offspring for a given time, and the principal obligor is bound to comply with this undertaking without reference to the conduct of the female or her offspring. Nor would their conduct after the marriage, however depraved and vicious it might be, have the effect of releasing the securities on the bond from the obligation they assumed. The bond imposes no obligation upon the principal obligor to live with the female, nor does it impose upon the female or her offspring any obligation to live with him. Whether living together in peace and amity, or living together in violence and tumult, or living separate by mutual consent or for good reason, or living separate on account of mutual fault, or solely on account of the fault of the female, the plain obligation of the bond remains the same at all times — the female and her offspring must be supported by the seducer. It may be said that this is cruel and harsh in the extreme, but the bond is so written, and it can be well said that nothing in this requirement is so cruel as the act of leading a virtuous female to her ruin, or as harsh as a term of twenty years penal servitude, which the seducer has avoided by undertaking the obligation required by the bond.

5, 6, 7. As long as the marriage stands undissolved and unattacked the obligation of the bond given by the seducer remains unimpaired. Even if the marriage could be set aside or annulled for some reason which would render it void ab initio, the fact would

not avail as a defense to an action on the bond; certainly not until the marriage had been declared void in a judicial proceeding instituted for that purpose.    See, in this connection, Civil Code, § 2416; *Park* v. *Barron*, 20 *Ga.* 702.    Whether the granting of a total divorce and permanent alimony on account of the misconduct of the husband, consisting of abandonment of the wife and child and failure to support them, would relieve him from the obligation of the bond, is a question not involved in this case.    The granting of a decree for temporary alimony and the rendition of one verdict for divorce does not at all impair the marriage contract; and such a decree and verdict would not alone constitute a defense to the action on the bond.    Evidence showing that the husband had, either voluntarily or under the compulsion of a decree for temporary alimony, or partly in one way and partly in another, contributed funds sufficient at all times to support his wife and offspring according to their "situation and exigencies," would establish a complete defense, but the payment of no sum less than one which would accomplish this purpose could be relied on either as a complete or a partial defense to the suit on the bond.

8, 9. While the payment to the wife of no sum of money, either voluntarily or otherwise, which is less than the amount sufficient to support her and her offspring, will relieve the husband from a suit on the bond or prevent a judgment thereon in favor of the ordinary for the full amount named therein, still the fact that such payments had been made could and should be considered by the ordinary in determining when and how much of the judgment should be collected and paid to the wife, from time to time, for the support of herself and her offspring.

10. If the seducer lives with his wife and supports her and her offspring for the time fixed in the bond; or, if not living with her, he voluntarily and at proper times furnishes her with money, articles, or property sufficient to maintain and support her and her child according to their condition in life—their "situation and exigencies," there will be no breach of the bond.    If he wilfully or intentionally fails for one day even to provide for such maintenance and support, the condition of the bond is broken and he and his securities are liable for the full amount of the bond.    If, however, the ordinary, after judgment, should be satisfied that the husband is in good faith supporting his wife and her offspring, whether liv-

ing with them or not, he should decline to enforce the judgment for a greater sum than that which should have been expended by her during the period in which the husband had failed to make proper provision.   If the term of five years has expired when judgment is recovered on the bond, the ordinary should enforce the judgment for such amount as should have been laid out and expended by the wife for herself and offspring during that portion of the five years in which the husband failed to support them.    If during the period of five years the wife and offspring have been maintained in a manner suitable to their condition in life and necessities, or a sum of money necessary for that purpose has been collected on the bond and paid out for their benefit, and any part of the judgment still remains uncollected, or, if collected, there is still in the hands of the ordinary an amount unappropriated and not necessary to be appropriated to the support of the wife and her child, then it would seem that the obligor and his securities would be entitled to have the judgment marked satisfied, and the party who had actually paid the money to the ordinary would be entitled to have the unexpended balance returned to him.   So far as the questions above discussed are concerned, this case is to this court one of first impression.   While the statute involved was passed more than seven years ago, no case arising under it has ever reached this court, and, so far as we are informed, the present case is the only one that has ever arisen in the State.   We have thus been deprived of any precedent to aid us in framing our decision.   There is, we have reason to believe, no similar statute in any State of the Union, and possibly none in any country of the world.   We have endeavored to determine the intention of the General Assembly, by the application of the familiar and elementary rule of construction requiring that the old law and the mischief should be first ascertained and the new law so construed as to relieve the mischief and advance the remedy therein provided.   Resorting to the only law on our statute book that has anything like a resemblance to the law under consideration for an analogy, we have reached the conclusions above stated, which we think are authorized by the terms of the statute when taken in the light of the past events in the judicial history of the State, which evidently brought the statute into existence.   While some questions discussed are not involved in the present case and what is said with reference thereto is purely obiter,

the discussion of such questions was absolutely necessary to an intelligent consideration of those actually involved; and what is said, while not binding as authority upon any one, not even the writer, may be of some value when these questions arise in other cases.

11. The court did not err in overruling the demurrer to the petition. The petition set forth a cause of action, and the suit was not prematurely brought. While there were some matters in the petition which should have been stricken as surplusage, the failure to strike them did not in the present case prejudice the defendants, as no evidence was offered under such allegations, and the verdict rendered was absolutely demanded under the evidence offered to support those allegations which were properly a part of the petition. In addition to this, it would seem that surplusage in pleading can not be taken advantage of by demurrer, the remedy for this defect being a motion to purge the pleading of such matter, such motion, in the discretion of the court, to be referred to a master to revise the pleadings at the expense of the party at fault. See Stephen, Plead. (Heard), *424.

12. The evidence offered by the plaintiff was the bond sued on and the testimony of the wife of the principal obligor, to the effect that they were married in July, 1898, that they separated in July, 1899, and that he had never contributed anything to her support except ten dollars in temporary alimony. The suit was filed on August 18, 1899. This evidence absolutely demanded a finding in favor of the plaintiff for the full amount of the bond sued on, and there was no error in directing a verdict to that effect on the pleadings as they then stood. Nor do we think there was any error in striking the answers of the defendants. The answer of the principal obligor as well as the amendment offered to the same set forth no defense, and that answer as well as that part of the answer of the securities which adopted the same was properly stricken. The risk of the securities was not at all increased by the conduct of the wife in leaving her husband without cause, and that part of the answer setting this up as a defense was also properly stricken. The refusal to grant a continuance on account of the absence of one of the defendants will not cause a reversal of the judgment, as it appears that the answers filed set up no defense, and were therefore properly stricken, as it was not made to appear at the trial, nor has been since, that if the absent party had been present he would have had

any defense to the action.    There was no error requiring a reversal of the judgment.

*Judgment affirmed.    All concurring, except Lewis, J., absent.*