## GRIFFIN v. GRIFFIN et al.

1. A man who elects to stop a prosecution for seduction, by marrying the woman alleged to have been seduced, and giving bond for her support, pursuant to the Penal Code, § 388, can not have the marriage declared void, as procured by duress.

2. One can not be said to be deceived by an alleged false representation, when he admits that he had knowledge of its falsity.

3. Is an equitable suit to annul a marriage maintainable for causes recognized by the statute as grounds for total divorce? *Quære*.

4. It is no ground to cancel a bond executed under the Penal Code, § 388, to stop a prosecution for seduction, that the man has subsequently discovered proof exonerating him of the crime.

5. An equitable petition for the annulment of marriage, and for the cancellation of the bond executed pursuant to the Penal Code, § 388, which fails to allege a cause of action in these respects, can not be retained as a statutory proceeding for divorce; and especially so when it is lacking in a jurisdictional averment required in a libel for divorce, and contains no specific prayer for divorce.

Argued January 15.—Decided April 15, 1908.

Equitable petition. Before Judge Edwards. Paulding superior court. June 4, 1907.

This is a petition by John E. Griffin against Lilla Griffin, W. A. B. Ragsdale, and B. E. Croker, ordinary, to annul a marriage, to cancel a bond given by the plaintiff to the ordinary, pursuant to the Penal Code, § 388, for the purpose of stopping a prosecution for seduction, and to enjoin any action to enforce the bond until a final decree may be rendered. The petition in substance alleged: W. A. B. Ragsdale is the father of Lilla Griffin, and in June, 1905, he caused to be issued against petitioner a warrant charging him with her seduction. At the time of making the affidavit upon which the warrant issued, Ragsdale asserted that his daughter (who was nineteen years of age) was a virtuous female, and had been seduced by petitioner, and had become pregnant four months theretofore. About the time the warrant was issued, Ragsdale approached Henry R. Griffin, the father of petitioner, and represented to him that petitioner had seduced his (Ragsdale's) daughter, and that he was determined to prosecute petitioner for seduction, and cause him to be imprisoned in the penitentiary of the State for this offense, unless petitioner married the said Lilla, and that the neighbors had made up a large sum of money, to wit, $1,500, to be employed in prosecuting petitioner for seduction. After the warrant had issued, petitioner's father made known to

him Ragsdale's assertions and intent to prosecute him for seduction, and, about the same time, two other citizens of the county informed him that Dr. George Ragsdale had declared to them that Lilla was four and a half months advanced in pregnancy. He denied that he had had sexual intercourse with Lilla, and declared to these citizens and his father that he had not seduced her, and was innocent of the charge. He was raised on a farm, had always borne a good character, and "knew nothing of courts or the nature of said charge made against him." His father stated to him, that, notwithstanding his good character, he was at the mercy of W. A. B. Ragsdale and his daughter, and that in the event he refused to marry Lilla and give bond and security for her maintenance for the term of five years, as provided by law, he would be convicted of the offense of seduction, and sent to the penitentiary; that Ragsdale and his daughter were respectable people, and could and would convict him of seduction. He protested his innocence to his father, and affirmed that he would rather die than marry the said Lilla; to which his father replied that he had advised with counsel, and that he must marry her or go to the penitentiary. Petitioner further alleged, that being influenced by the threats of W. A. B. Ragsdale to prosecute and convict him of seduction and send him to the penitentiary, and by the advice and command of his father to marry her and escape the penitentiary, he married her, on June 8, 1905, and on the same day executed and delivered to the ordinary of the county a bond, with his father as security, in the sum of $750, for the support and maintenance of his wife and such child or children as she might have, for the term of five years, as required by law. After the marriage he lived with his wife at his father's house for two months, and then, ascertaining that the fraud and duress practiced on him in bringing about the marriage could be established, he refused longer to live with her and repudiated the marriage. He alleged that on September 20, 1905, his wife committed the offense of adultery with an unknown person; also, that prior to her marriage with him she was not a virtuous female, that in November, 1902, she committed the offense of fornication with a named person, and that he was ignorant of her unchastity, until after his marriage; that the marriage and the execution of the bond were procured by the fraud and duress of W. A. B. Ragsdale and Lilla Ragsdale, in falsely and fraudu-

lently accusing him of seduction, and of being the father of the child with which she was pregnant, and causing the issuance of the warrant against him for seduction; that he was not guilty of the crime of seduction, and that Ragsdale, at the time of preferring the charge against him, knew that his daughter Lilla was not virtuous, and that petitioner was not the father of the child with which she was pregnant. He prayed for the annulment of the marriage, and for a cancellation of the bond. The court dismissed the petition, on general demurrer, and the exception is to that judgment.

*J. J. Northcutt* and *A. J. Camp,* for plaintiff.

*John W. & G. E. Maddox* and *C. D. McGregor,* for defendants.

EVANS, P. J. 1-3. The plaintiff, against whom a warrant for seduction had been issued, stopped the prosecution by marrying the female alleged to have been seduced, and by giving the statutory bond. Section 388 of the Penal Code provides, that a prosecution for seduction "may be stopped at any time by the marriage of the parties, or a bona fide and continuing offer to marry on part of the seducer: *Provided,* that the seducer shall at the time of obtaining the marriage license from the ordinary of the county of the female's residence, give a good and sufficient bond in such sum as said ordinary may deem reasonable and just, taking into consideration the condition of the parties, payable to said ordinary and his successors in office, and conditioned for the maintenance and support of the female and her child or children, if any, for the period of five years. If the defendant is unable to give the bond, the prosecution shall not be at an end until he shall live with the female, in good faith, for five years." The plaintiff seeks in this proceeding to have his marriage annulled, and the bond canceled, because of the conduct of his wife and her father, alleged in the petition. He contends that the circumstances under which he married amounted to duress. "Duress consists in any illegal imprisonment, or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will." Civil Code, § 3536. The facts relied on to constitute duress are, the assertion by Ragsdale to the plaintiff's father that Ragsdale's daughter had been seduced by the plaintiff, and that Ragsdale intended to prosecute

34

the plaintiff for seduction, unless the plaintiff married her, and that the neighbors of Ragsdale had made up a large sum of money to be employed in the prosecution; that after the warrant had been issued, the plaintiff's father communicated these matters to him, and advised and commanded him to stop the prosecution, by marrying the woman alleged to have been seduced, and giving the bond required by the statute in such cases. There is no charge that the warrant was illegally issued, or that the money which was to be contributed by the neighbors was to be unlawfully employed in aid of the prosecution. Nor is it alleged that any force or threat of personal violence was used to induce the plaintiff to marry. On the contrary, it appears that when his father received information that Ragsdale intended to prosecute him, and had caused a warrant to be issued, the father advised with the son as to the best course to pursue. In that conference the plaintiff protested his innocence. The father had previously taken legal advice, and told his son that the Ragsdales' standing was such that they would convict him,—that is, that a jury would likely believe their testimony. Two courses were open to him; either to face a trial and abide its legitimate consequences, or to stop the prosecution, in compliance with the statute. The plaintiff's conduct shows that he made his election not because of any demand of Ragsdale, but to avail himself of the statute, to escape the consequences of a prosecution for seduction. Force, to constitute duress in law, must be unlawful; and a man lawfully arrested on a warrant for seduction, who, to procure his discharge, marries the woman, can not have the marriage declared void, as procured by duress. 1 Bishop on Mar. Div. & Sep. § 543; Marvin *v.* Marvin, 52 Ark. 425 (12 S. W. 875, 20 Am. St. R. 191); La Coste *v.* Guidroz, 47 La. Ann. 215 (16 So. 836); Johns *v.* Johns, 44 Tex. 40; Williams *v.* State, 44 Ala. 24; Sickles *v.* Carson, 26 N. J. Eq. 440. It would be a travesty of law for a man to be able to avoid a criminal prosecution for seduction, by virtue of a statute allowing him so to do, and then be permitted, immediately thereafter, in a court of equity, to set aside the marriage on the ground that he subsequently discovered evidence to disprove the charge brought against him.

The validity of the marriage is further attacked on the ground of fraud. The alleged fraud is, that the Ragsdales, at the time

of preferring the charge of seduction against him, knew that the woman was not virtuous, and that he did not discover, until sometime after his marriage, that some three years previously she had committed fornication with a certain person, named in the petition. The plaintiff admits that at the time of marriage he was informed that his wife was pregnant, but denies that he had carnal knowledge of her up to that time. If it be true, as he so positively affirms, that he had never carnally known his wife prior to his marriage, then her pregnancy gave him indubitable information that she was not a virtuous woman, notwithstanding the representations to the contrary. With such knowledge he can not be considered as deceived by the representations as to his wife's virtue.

We have discussed the merits of the case on the assumption that a marriage may be annulled in equity. But the marital relation involves something more than a civil contract between the parties; it represents a most important status of our social fabric, in which the public is interested. It therefore may be doubted whether an equitable suit for the annulment of a marriage is maintainable for causes which are recognized by the statute as grounds for divorce. *Brown* v. *Westbrook,* 27 *Ga.* 102. Fraud or duress in obtaining the marriage are grounds for divorce. Civil Code, §2426. Can a marriage be set aside on these grounds, except in a statutory divorce proceeding? *Quære.* Compare Civil Code, §2416.

4. It is clear that the plaintiff is not entitled to cancel the bond given under the Penal Code, §388, to stop the prosecution for seduction. To slightly paraphrase the language of Mr. Justice Cobb, in the case of *Duke* v. *Brown,* 113 *Ga.* 310 (38 S. E. 764), the plaintiff was given his choice between the penitentiary and the contract; and if he elects to enter into the contract instead of the penitentiary, he must not forget that he has purchased his liberty at the price of the undertaking, and he is not entitled to have his undertaking, which he elected to make in lieu of a possible term of penal servitude, set aside because he may now be able to demonstrate his innocence of the crime of seduction. See also *Crew* v. *Hutcheson,* 115 *Ga.* 511 (42 S. E. 16).

5. But it is insisted that even if the grounds alleged in the petition are insufficient to entitle the plaintiff to sue for an annulment of his marriage and a cancellation of his bond, the petition

should have been retained for the purpose of permitting him to obtain a total divorce, on the ground of adultery since his marriage. This can not be done; for the reason that there is no prayer for a divorce; nor is it even alleged in the petition that the plaintiff has been a resident of the State for a year immediately preceding the filing of his petition. Such residence is a prerequisite to an application for a divorce of any kind. Civil Code, §2431. This jurisdictional averment is essential to every application for a divorce. Besides, the proceeding for an annulment of the marriage, and the proceeding for a divorce upon grounds arising since the marriage, are entirely separate and distinct causes of action. One proceeds upon the theory that the marriage is void ab initio, and the other admits the validity of the marriage and asks a divorce from its bonds. One is a proceeding in equity, the other a statutory proceeding. A single verdict in the equity case is all that would be required to support a decree of annulment; whereas in a divorce proceeding there must be two concurrent verdicts, and the jury returning the last verdict is invested with discretion as to removing the disabilities of the defendant. There was no error in dismissing the petition, on demurrer.

*Judgment affirmed. All the Justices concur.*