## BAXTER *v.* ROGERS.

No. 14376. JANUARY 13, 1943.

*Sam G. Dettelbach* and *W. E. Armistead,* for plaintiff.

REID, Chief Justice. In article 6, section 15, paragraph 1, of the constitution of this State (Code, § 2-4201) it is declared: "No total divorce shall be granted, except on the concurrent verdicts of two juries, at different terms of the court."

The Code declares: "The following grounds shall be sufficient to authorize the granting of a total divorce: . . Mental incapacity at the time of the marriage. . . Force, menaces, duress, or fraud in obtaining the marriage." § 30-102. "To constitute an actual contract of marriage, the parties must consent thereto voluntarily, and without any fraud practiced upon either. Drunkenness at the time of marriage, brought about by art or contrivance to induce consent, shall be held a fraud." § 53-103. "Marriages of persons unable to contract, or unwilling to contract, or fraudulently induced to contract, shall be void. The issue of such marriages, before they are annulled and declared void by a competent court, shall be legitimate. In the latter two cases, however, a subsequent consent and ratification of the marriage, freely and voluntarily made, accompanied by cohabitation as husband and wife, shall render valid the marriage." § 53-104.

The case of *Bell* v. *Bennett,* 73 *Ga.* 784, involved an application for a year's support. The exception was to an order striking objections interposed by the representative of the estate of Jesse M. Bennett, to the effect that the applicant was never the wife of the decedent, because at the time, before and after the pretended marriage and until his death, Bennett was insane. It was said in the opinion: "The marriage in this case was void in its inception, . . and . . did not require the sentence, decree, or judgment of any court to restore the parties to their original rights or to make the marriage void. It was a mere nullity from the beginning, and so continued to the end. It was as if no marriage had ever taken place." That decision was followed in *Medlock* v. *Merritt,* 102 *Ga.* 212 (29 S. E. 185), where it was held: "The next of kin of a deceased woman, claiming to be her heirs at law upon the theory that she died unmarried, may, whenever in a legal proceeding it becomes essential to the assertion of their rights, attack as void an alleged marriage between the deceased and another, on the ground that at the time the marriage ceremony was performed she was of unsound mind and mentally incapable of contracting marriage." See *Crawford* v. *Crawford,* 139 *Ga.* 535, 539 (77 S. E. 826); *Renfroe* v. *Hamilton,* 193 *Ga.* 194 (17 S. E. 2d, 709, 76 A. L. R. 771). In the case of *King* v. *State,* 40 *Ga.* 244, involving an indictment for bigamy, it was said: "We think the demurrer to the indictment good. Every fact stated therein may be true, and the defendant may be not guilty, simply because the first marriage may not have been lawful."

None of the above cases involved a direct proceeding seeking to have a marriage contract annuled.

In *Brown* v. *Westbrook,* 27 *Ga.* 102 (3), it was held: "A proceeding to declare marriage a nullity on account of the mental incapacity of one of the parties to consent to the contract, at the time it was entered into, is unknown to our judiciary system, and is repugnant to the feelings and policy of our people." The case last quoted from was a libel for divorce. Benning, J., dissented on the theory that since there had been no marriage there could be no divorce. In *Griffin* v. *Griffin,* 130 *Ga.* 527 (3) (61 S. E. 16, 16 L. R. A. 937, 14 Ann. Cas. 866), the question as to whether "an equitable suit to annul a marriage [is] maintainable for causes recognized by the statute as grounds for total divorce," was expressly

left open, as was done in *Gay* v. *Pantell*, 164 *Ga.* 738 (5) (139 S. E. 543), each of which was concurred in by all six Justices.

In *Cale* v. *Davis*, 135 *Ga.* 185 (68 S. E. 1101), two Justices dissenting, the plaintiff sought to annul a marriage on the ground that the plaintiff was so drunk at the time of the pretended marriage ceremony that he was deprived of reason and was unable to consent to the marriage contract. It was alleged that shortly after the ceremony the plaintiff repudiated the marriage, and since that time had never lived with defendant as her husband; and that no children were born of the union. A verdict in favor of annulment was returned, and a decree was duly entered. It was held, in effect, that the proceeding was in law a suit for divorce, and that the decree was void because it was based on one verdict, whereas the constitution requires two verdicts at successive terms for the granting of divorces.

In *Hand* v. *Berry*, 170 *Ga.* 743 (154 S. E. 239), a proceeding was brought on behalf of a girl of fifteen years, for the sole purpose of annulling her marriage. It was alleged, that she did not intend to contract marriage with the defendant; that she was acting in fun and under the spirit of the mutual challenging and daring of each other, and without any real knowledge of the consequences of her act, and without really understanding the serious legal effect of such act; that the ceremony of marriage was entered into in jest, with no intention of entering into an actual marriage status. It was held: "Even if a court of equity has jurisdiction in this State to annul a marriage contract, the petition in this case does not allege facts sufficient to set up a cause of action."

In *Johnson* v. *Johnson*, 172 *Ga.* 273 (157 S. E. 689), all the Justices concurring, it was held: "Where a guardian is appointed for a man who was insane at the time of his marriage and brings an equitable suit to have the marriage declared null and void upon the ground of the insanity of his ward at the time of the ceremony of marriage, such petition should be dismissed upon general demurrer. Mental incapacity at the time of marriage is, under a statute of this State, made a ground for divorce; and a party who was insane at the time of the marriage, or his guardian appointed after the marriage, must resort to the remedy of divorce to have the contract annulled and the status destroyed."

*Shearouse* v. *Shearouse,* 176 *Ga.* 902 (169 S. E. 125), involved a situation where the plaintiff sought to annul a marriage alleged to be void because the petitioner was an unwilling party and took part in the pretended marriage only by reason of threats of great bodily harm made against him. While the majority opinion turned on the question whether there was a final judgment, Mr. Justice Hill wrote a dissenting opinion, concurred in by Chief Justice Russell, in which it was stated that "this court has expressly ruled that a contract of marriage can not be annulled in an equitable petition brought for that purpose."

It is seen from the foregoing, which has been stated without any attempt at explanation or elaboration, that there has not been uniformity and not often unanimity in the decisions of our courts on this important question. In the August, 1942, edition of the Georgia Bar Journal was published a timely and illuminating article by Mr. Edward E. Dorsey of the Macon Bar, dealing with the confusion which has resulted from these different lines of decisions, and pointing out the difficulties confronting the trial judges in their efforts to give effect to the apparently conflicting provisions of the Code. As pointed out in the article referred to, "The divorce act which was enacted by the Georgia Legislature in 1850, which has remained unchanged to this day, has been the fountainhead of the law of domestic relations in this State." The author of this article emphasizes the difficulty in the following statement: "Thus we see that the two Code sections have been interpreted in such a way as to make them conflict, which result was of course almost unavoidable. It is possible that the sections might have been made to jibe by allowing the petitioner whose suit was based on one of the dual grounds to have an option to sue either for annulment or divorce, at his discretion; this solution, however, would not be logically sound, nor would it conform to the old common-law authority. Probably much confusion would have arisen from such a practice."

There is much force and logic in the argument urged upon us now, as was urged also in the dissenting opinion of Benning, J., in *Brown* v. *Westbrook,* supra, where he pointed out: "A divorce case is a case in which the plaintiff states a marriage between himself, or herself, and the defendant, and prays that for some alleged cause he or she may be divorced from the defendant. The decla-

ration must state a marriage, for where there is no marriage, there can be no divorce. Divorce is the partial or total separation— *unmarrying*—of married persons, and there can be no separation, if there has been no union—no unmarrying, if there has been no marrying. The declaration, then, must state a marriage: if it states that there was no marriage, it is impossible that the case can be a divorce case. . . The case, then, made by the declaration is in law precisely what it would have been, had the statement in the declaration been that there had never been any marriage at all between the parties. And such a case as that, I think I may assume, is not a divorce case."

One may easily argue that annulment may be desirable, certainly in many situations. There was such a proceeding at common law, and Chancellor Kent is quoted as saying that "though no sentence of avoidance be absolutely necessary, yet as well for the sake of the good order of society as for the peace of mind of all persons concerned, it is expedient that the nullity of marriage be ascertained by a court of competent jurisdiction." 2 Kent's Com. 76.

It can also be strongly urged that the legislature, although not expressly providing for it, surely contemplated annulment not only by its provisions with reference to void marriages that "The issue of such marriages, before they are annulled and declared void by a competent court, shall be legitimate," but also by its actual declaration as in accordance with general law on the subject that certain marriages were "void." Code, § 53-104.

But regardless of this apparent confusion, we have concluded that we are not at liberty to approach the question anew, or in the case before us to do more than was substantially done in the case of *Johnson* v. *Johnson*, supra, where Presiding Justice Beck took full note of the previous cases on the question, and then speaking for the court said:

"Now in a contract where property rights only are involved, and one of the parties to such a contract was an imbecile, or was insane or mentally incompetent to contract, such a contract may be set aside in a suit in equity by the insane party or by his guardian in his behalf. But a contract of marriage, consummated by an actual ceremony of marriage and solemnized in any of the ways recognized by the law, is more than a mere contract. It creates a status—a status of vast importance to society and to the individ-

uals concerned; and such a contract will not be destroyed by a court of equity in such a way as to carry down with it the status thus created. In *Griffin .*v. *Griffin,* supra, it was said: 'We have discussed the merits of the case on the assumption that a marriage may be annulled in equity. But the marital relation involves something more than a civil contract between the parties; it represents a most important status of our social fabric, in which the public is interested. It therefore may be doubted whether an equitable suit for the annulment of a marriage is maintainable for causes which are recognized by the statute as grounds for divorce. *Brown* v. *Westbrook,* 27 *Ga.* 102. Fraud or duress in obtaining the marriage are grounds for divorce. Civil Code, § 2426. Can a marriage be set aside on these grounds, except in a statutory divorce proceeding? Quære. Compare Civil Code, § 2416.'

"In *Brown* v. *Westbrook,* supra, it was said by Judge Lumpkin, who wrote the opinion in that case: 'Nowhere else is mental incapacity, except in Georgia, so far as I know, made a ground for divorce. Elsewhere proceedings are instituted in chancery, or some other court, to annul the pretended marriage. A sentence of nullity is rendered. . Now, I maintain broadly, that in this State no decree can be rendered, separating man and wife, where there has been a marriage de facto, except under our divorce laws. That they have virtually repealed the whole body of the English Ecclesiastical and Common Law upon this subject. Was any such proceeding ever known or heard of in Georgia, to obtain a sentence of nullity? . . The whole tenor of our legislation favors the view which I have taken of this subject; and it is right that it should. No innocent woman should be separated from the man whom she supposed to be her husband, without being provided for; and the idea of bastardizing the children of such a marriage is monstrous.' The reasoning in that case seems to me to be as sound as it is vigorous. It is true this decision, so far as it relates to the question under consideration, was rendered by a divided court, and we might lay down a different doctrine without formally overruling the case; but before doing that we should be convinced that it was wrong, and we are not so convinced."

So we feel bound by this decision, concurred in by all of the Justices, to hold as we do, that an equitable suit to annul a marriage is not maintainable in this State for causes recognized by the

statute as grounds for total divorce; and that the judge did not err in dismissing the action in the instant case.

*Judgment affirmed. All the Justices concur.*