MACKEY *v.* MACKEY.

No. 15023.   January 4, 1945.

*W. B. Mitchell,* for plaintiff.   *A. M. Zellner,* for defendant.

DUCKWORTH, Justice.   Counsel for the plaintiff in error concedes in his brief that, although it is alleged that the wife was pregnant before the petitioner entered into a marriage ceremony with her, he would not be entitled to a decree of divorce or annulment on that ground, since her condition was made known to him at the time.   It is recognized that the action is maintainable, if at all, only because of the alleged force and duress which are specifically made grounds of divorce by the Code, § 30-102 (4).   It is argued, however, that, though admittedly an annulment would have the effect of bastardizing the child born during wedlock, the child is not his, and a court of equity should come to his aid and grant relief which could not be had in an action for divorce, thus permitting him to overcome the presumption of parenthood and avoid a multiplicity of suits.

In *Brown* v. *Westbrook,* 27 *Ga.* 102, an action for divorce, the defendant excepted to the judgment of the court overruling his

motion to set aside that part of the verdict making provision for the support of the wife and child, contending that the marriage was meretricious and the child a bastard. In affirming the judgment and treating the position of the defendant as seeking annulment, the majority of the court, speaking through Lumpkin, J., said: "Now, I maintain broadly, that in this State no decree can be rendered, separating man and wife, where there has been a marriage *de facto*, except under our divorce laws. That they have virtually repealed the whole body of the English ecclesiastical and common law, upon this subject. Was any such proceeding ever known or heard of in Georgia, to obtain a sentence of *nullity*? The recollection of the bar, and the records of the courts furnish no such precedent. On the contrary, separations between those who are husband and wife *de facto*, have only been effected by the act of the legislature, or of the courts, or by the joint action of both; and that, too, in a proceeding both in form and substance, *for a divorce*. It may be said that the power may exist, although it has lain dormant since the beginning of our history, liable to be called at any time into action. The failure to exercise this power is strong evidence that it never was recognized and adopted by our people; and our statutes show that it is distasteful to their feelings and sense of right. . . No innocent woman shall be separated from the man whom she supposed to be her husband, without being provided for; and the idea of bastardizing the children of such a marriage is monstrous." In *Griffin* v. *Griffin*, 130 *Ga.* 527 (61 S. E. 16, 16 L. R. A. (N. S.) 937, 14 Ann. Cas. 866), and *Gay* v. *Pantell*, 164 *Ga.* 738 (139 S. E. 543), the question was expressly left open. In *Cale* v. *Davis*, 135 *Ga.* 185 (68 S. E. 1101), the petitioner sought to annul a marriage on the ground that at the time of the marriage he was so intoxicated as to be deprived of reason and unable to contract. Though a verdict had been returned in the trial court and a decree entered pursuant thereto, this court held that the proceeding was one for divorce and reversed the judgment because it was had only after one verdict, whereas the constitution requires two verdicts at different terms of court. In *Hand* v. *Berry*, 170 *Ga.* 743 (154 S. E. 239), in a proceeding to annul a marriage alleged to have been entered into in jest, it was held that, "Even if a court of equity has jurisdiction in this State to annul a marriage contract, the

petition in this case does not allege facts sufficient to set up a cause of action." Thus until 1930, when the question was squarely presented in *Johnson* v. *Johnson, 172 Ga. 273* (157 S. E. 689), there had been no positive ruling by this court as to whether or not a court of equity would annul a marriage on a ground which would in an action for divorce authorize a jury to dissolve the marriage status. In the *Johnson* case the guardian of an insane ward filed an equitable petition against the wife of his ward, alleging that the marriage between her and his ward was null and void because at the time the marriage ceremony was performed he was unable to contract marriage, being a person of unsound mind and an imbecile; that he had not at any time since such ceremony been mentally capable of ratifying the marriage; that he had continued to be insane; that after he was confined in a hospital the wife gave birth to a child, but the petitioner denied that his ward was the father of the child, alleging that there had been no conjugal relations between his ward and the wife in twenty months. It was held by this court that, since mental incapacity at the time of the marriage is, under a statute of this State, made a ground for divorce, resort must be had to the remedy of divorce to have the status destroyed. In the opinion it was said: "Now in a contract where property rights only are involved, and one of the parties to such a contract was an imbecile, or was insane or mentally incompetent to contract, such a contract may be set aside in a suit in equity by the insane party or by his guardian in his behalf. But a contract of marriage, consummated by an actual ceremony of marriage and solemnized in any of the ways recognized by the law, is more than a mere contract. It creates a status—a status of vast importance to society and to the individuals concerned; and such a contract will not be destroyed by a court of equity in such a way as to carry down with it the status thus created." The opinion quotes from the *Brown* case, supra, as hereinbefore set out, and adds: "The reasoning in that case seems to me to be as sound as it is vigorous. It is true this decision, so far as it relates to the question under consideration, was rendered by a divided court, and we might lay down a different doctrine without formally overruling the case; but before doing that we should be convinced that it was wrong, and we are not so convinced." Again the question was presented in *Baxter* v. *Rogers, 195 Ga. 274* (24 S. E. 2d,

52), although no child was involved, and it was ruled: "An equitable suit to annul a marriage is not maintainable in this State for causes recognized by the statute as grounds for total divorce." In the opinion it was said: "One may easily argue that annulment may be desirable, certainly in many situations. There was such a proceeding at common law, and Chancellor Kent is quoted as saying that 'though no sentence of avoidance be absolutely necessary, yet as well for the sake of the good order of society as for the peace of mind of all persons concerned, it is expedient that the nullity of marriage be ascertained by a court of competent jurisdiction.' 2 Kent's Com. 76. It can also be strongly urged that the legislature, although not expressly providing for it, surely contemplated annulment not only by its provisions with reference to void marriages that 'The issue of such marriages, before they are annulled and declared void by a competent court, shall be legitimate,' but also by its actual declaration as in accordance with general law on the subject that certain marriages were 'void.' Code, § 53-104. But regardless of this apparent confusion, we have concluded that we are not at liberty to approach the question anew, or in the case before us to do more than was substantially done in the case of *Johnson* v. *Johnson,* supra, where Presiding Justice Beck took full note of the previous cases on the question."

Candor requires the admission that, as contended by the plaintiff in error, a decree of divorce would not bring to him the relief that would be had by annulment. Where a decree of divorce is rendered, the legislature has wisely provided that all children born in wedlock, or within the usual period of gestation thereafter, are presumptively legitimate, and though such presumed legitimacy may be rebutted, this strong presumption can not be overcome, where possibility of access exists, except by clear and convincing proof. No man with a proper regard for his responsibility as a father would fail to approve this humane consideration extended by law to his children though they be the issue of a marriage into which he was induced to enter by fraud, force, or duress. But where a child, though born during the period of wedlock, is not in truth his own, what mortification and pain could be greater than that under which he must stand before the public as the putative father of one whom he knows to be not of his own blood, and who, until the presumption be removed, will in his eyes be the

living reminder of the wrong visited upon him! A decree of annulment would place the child in the status of a bastard, and thus render him incapable of inheriting from the putative father. Whether or not this provision of the law as to disability to inherit be salutary and wise, assuming the child to be the offspring of the putative father, the bastardizing of one who is begotten by another would be simple justice to a stranger in blood, and as an abstract principle it might be argued with much plausability that a court of equity upon appropriate pleadings should put at rest in an annulment proceeding all questions as to the status of the child. However, all constitutional and legislative declarations upon the subject of the dissolution of the marriage relation show an intention that only by an action of divorce may this be accomplished. By an act approved February 22, 1850 (Ga. L. 1849-1850, p. 151, Cobb's Digest, 226), the legislature, at a time when the only grounds at common law authorizing a total divorce were pre-contract, consanguinity, affinity, and corporeal infirmity (see *Head* v. *Head, 2 Ga.* 191), declared, as its first expression on the subject, the grounds upon which a divorce might be obtained in this State, and specifically named as grounds, among others, force and duress, usually cognizant in equity, thus evincing an intention that not otherwise should the status be destroyed. At that time the constitution of 1798 as amended had placed in the superior courts the sole power to grant divorces, and provided that, "Divorces shall be final and conclusive when the parties shall have obtained the concurrent verdicts of two special juries authorizing a divorce upon such legal principles as the General Assembly may by law prescribe." It was in pursuance of the constitutional authority, above expressed, to prescribe the legal principles upon which a total divorce should be granted, that the legislature acted in 1850. To take the view that an annulment might be had in equity upon a single verdict, would be to shut our eyes to the evident disfavor with which the constitution and the legislature regard the disturbance of the marriage status. The requirement as to the necessity of two verdicts appeared in the Code of 1863, and is contained in each succeeding Code of this State; and in the Code of 1882 and in all subsequent Codes provision is made that such verdicts must be had at different terms of court. Moreover, the paramount authority, the constitution of 1798 as amended, had already provided

that, to authorize a total divorce, two concurrent verdicts must be had, and this requirement appears in each succeeding constitution of this State, and by the constitution of 1877, now in force, it was also provided that the verdicts must be had at different terms of court. Thus is expressed a fixed purpose that a ground sufficient to authorize a dissolution of the marriage status must be' sustained to the satisfaction of not twelve but twenty-four jurors, and that the severance of the union be not hastily achieved, but that there be, between the first and second verdicts, an interval in which differences might be composed, and reason and mutual tolerance supplant passion and discord. These considerations of the impediments to ease and facility of procurement of a dissolution of the marriage status impel us to the conclusion that the constitutional and legislative declarations manifest a resolute intent that resort may not be had to a court of equity for annulment of a de facto marriage by a single verdict upon any ground which the law makes a ground for divorce in an action at law. So, notwithstanding the particular merits of any case, the paramount interest of the public in the status of husband and wife would, it would seem, be best conserved by an adherence to the principle, so ably stated by Judge Lumpkin in *Brown* v. *Westbrook,* supra, that a de facto marriage will not be so destroyed, but that an aggrieved party will be relegated to an action for divorce where the dissolution of the marriage status will be effected only as of the date of the decree. The *Johnson* and *Baxter* cases, supra, require us to hold, as we do here, that the petition as amended did not set forth a cause of action, and that the court did not err in sustaining the defendant's general demurrer and dismissing the action.

*Judgment affirmed. All the Justices concur.*