No. 45.—DAVIS CASTLEBERRY, plaintiff in error, *vs.* ROBERT· SCANDRETT, defendant in error.

[1.] A Court of Equity will not afford relief to a party who, with all the means of protecting himself against the imposition of the other party, . abandons them and relies on his statements of quality or value.

[2.] The Court will not make a contract for parties. That the party complaining has been incautious, is no ground of relief, of itself.

[3.] An admission in an answer which, of itself, would excite suspicion of fraud or imposition on the part of the defendant, is not sufficient to warrant the retention of an injunction, when the particular fraud to be inferred from such admission, is denied by the answer.

[4.] On a motion to dissolve an injunction, on the coming in of the answer, the answer is to be taken as true. The answer, however, may impeach itself.

In Equity, in Taylor Superior Court. Decided by Judge WORRILL, April Term, 1856.

This was a bill filed by Davis Castleberry against Robert. Scandrett, alleging, that on or about the 1st day of October,

Castleberry *vs.* Scandrett.

1853, he entered into an agreement with said Scandrett to purchase the balance of a stock of goods then in possession of Scandrett, upon the following terms: Complainant was to take the goods at the original cost prices, to be ascertained by reference to the original bills, as they had been rendered by the different persons from whom they had been purchased, and to give in payment his notes, with good security, payable at three, six and nine months after their dates.

The bill charges, that in accordance with said agreement, complainant and Scandrett proceeded to make out a bill of said goods, without having the original invoice bills to refer to, of which complainant complained; but Scandrett assured him that he knew perfectly well the cost of said goods, and did not have time to look for said bills; that he would make everything right. Complainant then consented to proceed with the account of stock, which was completed, and amounted to the sum of $2.465 79; that complainant then executed three notes for $821 93 each, with security, payable at three, six and nine months after date.

The bill charges, that before said notes were delivered, it was distinctly agreed that complainant should have sufficient time before said notes were pressed, to raise from the sale of said goods the money to pay them; that complainant then took charge of said goods and offered them for sale at the usual per centum on the cost prices, but soon found that customers objected to the prices as being too high, and would not buy them; that some of the goods, when opened, were found to be damaged and otherwise inferior to what they had been represented to be; that some of them were so damaged, they could not be sold at any price, and complainant has them now on hand and is unable to dispose of them; that upon inquiry of other merchants, it was found that the goods had been sold to complainant at retail, and not at the original cost prices. Complainant alleges, that being inexperienced himself, and defendant being an old merchant, he had the utmost confidence in him and trusted to his representations; that he would not have given said notes had it not been for

Castleberry *vs.* Scandrett.

the representations of defendant in reference to the quality of said goods, and had he not been assured that the original bills of said goods would be furnished him, that any errors which had been made might be corrected.

The bill charges that defendant has been repeatedly applied to to furnish said original bills and to make the necessary correction in the prices charged; also, to make a reasonable deduction for the damaged goods—all of which he refuses to do; that he knew, at the time of the sale, that he he was selling the goods at retail prices to complainant, and now carefully keeps the original bills in his own possession, so that complainant cannot tell exactly what amount ought to be deducted, on account of over-charge and damage, but believes the amount would reach $600 or $800. The bill charges, that notwithstanding said agreement not to force the payment of said notes until complainant could raise the money by sale of the goods, defendant brought suit on the notes in September, 1854, and that the suit is now pending on the appeal.

The bill, as subsequently amended, charges that complainant would have had the agreement incorporated in said notes, that they were not to be paid until said goods were sold, but he did not know it was necessary; that defendant fraudulently took advantage of his ignorance on this point, and omitted to insert such a condition in the notes, or to give him a separate paper containing said agreement; that he never would have purchased said goods if he had not implicitly believed defendant would have complied with his promise not to force the payment of said notes until said goods could be sold.

The bill prays that the suits brought on said notes be enjoined until the rights of the parties can be determined in Equity, and that said notes be reformed so as to speak the real intention of the parties in reference to when they were to be paid.

The Chancellor having granted an injunction as prayed for by the bill, defendant filed his answer at April Term,

1856, of Taylor Superior Court, and moved the Court to dissolve the injunction, on the ground that the equity of the bill had been fully sworn off.

The answer admits that defendant did, at the time stated in the bill, sell complainant a stock of goods, and received from complainant his notes, with security, payable as stated, and that all the original invoice bills in defendant's possession were to be delivered to complainant for inspection, which the answer states was done, defendant stating to complainant that he had no bills for some of the goods. The answer states that defendant turned over all the bills he had, and that they remained in a drawer in complainant's store, to which complainant had access for some eighteen days; that complainant was requested to compare them with the bills made out by defendant; that at the expiration of the eighteen days, complainant stated that he was satisfied and executed the notes as he had agreed to do. The answer denies that the prices charged complainant were retail prices; but on the contrary, states that they were the cost prices; it denies that any portion of the goods sold were damaged, except a lot of tobacco, which he sold to complainant as damaged, and at a reduced price; it denies that any representations were made about any of the goods, except the tobacco, or that defendant concealed anything in order to defraud complainant; it denies that the notes do not speak the true contract between the parties in reference to the time when they were to be paid; and states, that if any indulgence was promised, it was after the notes were given, and was a mere gratuity and no part of the contract. The answer states that complainant has frequently promised to make payments on said notes, and never complained that he had been defrauded or deceived in any way; that defendant was compelled to sue the notes because required to do so by the security; that supposing complainant had examined the original bills of invoice, and having no further use for them himself, he destroyed them and cannot now produce them; but to the best of his knowledge and belief, the prices in the bill of sale ren-

dered by him to complainant, are in exact accordance with the prices charged in the invoice bills.

The answer denies that defendant took any advantage of complainant in said sale, or in omitting to state in the notes that they were not to be paid until the goods were sold; it denies that such was the contract, but states that the notes speak the true contract of the parties.

The Court below, upon hearing the bill and answer read, dissolved the injunction and ordered the suits brought on said notes to proceed.

Counsel for complainants excepted and assign the same as error.

REESE & CORBIT, for plaintiff in error.

MILLER & HOLSEY, for defendant in error.

*By the Court.*—McDONALD, J. delivering the opinion.

Taking the complainant's history of this case, and what ground is there for the interposition of a Court of Chancery?

[1.] He had purchased of the defendant a stock of goods. He agreed to give him first costs, exclusive of freights; and the first cost was to be ascertained by reference to the original invoices; and complainant was to give his notes at three, six and nine months in payment. The invoices were not produced, and the goods were not marked, yet the complainant agreed to proceed with the purchase and make up the new invoice from the memory of the defendant, on his promise to look up the bills and make every thing right. The amount being ascertained, the complainant gave to the defendant his three notes according to the contract. In the contract and before the giving of the notes, it was agreed that the complainant should have sufficient time to raise the money from the sale of the goods to pay for them. The time specified in the notes may have been, in the judgment of the parties, sufficient for that purpose. He alleges again, that customers objecting to his prices and refusing to buy, he was led to in-

Castleberry vs. Scandrett.

quire of other merchants, and found that the goods had been invoiced to him at retail prices, and not at original cost. Why did he wait until he purchased the goods and gave his notes for them before he informed himself of their value ?

If he purchased them, depending on his own judgment, when he had no knowledge of such things, and subjected himself to imposition, and was, in consequence of that, impos-ed upon by his own incompetent judgment, he cannot have relief in a Court of Chancery. A man's own folly, to deal with his eyes open, with a party more experienced, with the subject of the contract before him, and to rely on his state-ments of cost and value, with every means afforded him to form an opinion of its quality and value by an inspection of it, will not entitle him to relief in Equity. It is not like the misrepresentation of the annual value of the rent of premises put in market. Here the complainant chose to, go on and complete the contract without the production of invoices which the opposite party was bound to produce if he had not waived their production; and he did not complain until he found a difficulty in making sales, and he then proceeds to inquire of others in regard to their prices. The information he thus obtained was not necessarily evidence of imposition by defendant. Other merchants may have purchased at low-er rates.

But he alleges that some of the goods, when opened, were discovered to be damaged and inferior. He does not state the quantity, value or description of the goods thus damaged. There is no allegation that he did not examine the goods, or that he could not examine them before he purchased.

He states that he had great confidence in the defendant, and did not suppose that he, being an old merchant, would have taken advantage of his inexperience to defraud him, and that he refused to produce the old invoices to correct the new one by which he purchased. Notwithstanding this allega-tion, complainant certainly gave his notes after the invoice was taken, the goods estimated and the amount ascertained. He was satisfied, or why did he not, before the consummation

of the bargain, by giving the notes, require the production of the original invoices? The notes, he says, were sued without allowing time to sell the goods to meet them; and that suit was instituted in September, 1854.

[2.] The notes bare date 1st October, 1853. If the contract had been, that he was to give longer time than that specified in the notes, to allow complainant to raise money for their payment from the sale of the goods, what time was he to give?

There is none specified in the bill. It is indefinite on that subject. What decree could a Court of Chancery make in such case? What time should the Court say was time sufficient to make the sale? The Court might, left to its own conjecture, suppose that three, six and nine months was time enough. It will not make a contract for the parties. The bill shows that one of the notes had been due at least eight months; the second, five months; and the last, two months, the time the suit was commenced, and no payment had been made on either. There was great indulgence on a mercantile paper.

The amended bill alleges, that he would have made it a condition of said notes, that they should not be paid until the said goods were sold; but that he was mistaken as to the necessity of inserting such a condition therein. It is nowhere alleged that there was any such condition in the contract; and if there was none, he could not have inserted it as a condition in the notes.

The extent to which the allegations in the bill go is, that the defendant would give him time to raise money from the sale of the goods to pay the notes; and not that the notes were not to be paid until the goods were sold.

The plain construction of this affair is, that the defendant had a stock of goods which he desired to sell; that complainant purchased them without understanding the business in which he was about to engage, and did not know the value of the goods; that he had an opportunity of examining them, and instead of looking for himself, chose to rely on the state-

ment of his adversary; and that he gave his notes according to his contract, after taking the stock and without requiring the production of the invoices. The promised indulgence on the notes, if it extended beyond their maturity, did not enter into the contract, and was without consideration. The complainant shows that he made an injudicious contract, and that he yielded points in the progress of the business, that would have been of great advantage in protecting him from the imposition of the defendant, if he meditated a fraud.

Turning from the bill to the answer, we find that all the complainant's grounds upon which he asks the equitable interposition of a Court of Chancery, are denied. One circumstance of suspicion, to which I will presently allude, it is true, is disclosed by it, but not of that face, against the positive denials of the answer, to induce us to hold that the Chancellor violated the rules of equity, or the justice of the case, by dissolving the injunction.

The defendant answers, that all the original invoice bills, in his possession—defendant stating at the time, that for some of the goods he had no invoices—were deposited in a drawer in the complainant's store-room, of which he had notice, and was requested to compare them with the bills of sale made out by the defendant; that they remained there about eighteen days for the complainant's examination, after which time he requested the complainant to give him his notes, according to his contract, as he had had sufficient time to examine them; and that the complainant stated *that he was satisfied and gave his notes.* Defendant denies that there was any contract in regard to time, as charged in the bill, and denies the allegations of the bill, specially as to the facts constituting the fraud.

[3.] The circumstance to which I adverted above, is found in the answer of defendant, that he took possession of the original invoices left with the complainant, with his consent, and that he destroyed them to prevent an unnecessary accumulation of papers. If every thing was fair, he could have

had no use for them. They would not have added to his papers if they had been left with the complainant; and they might have been of use to complainant. The positive denials of the answer, throughout, of all the allegations of complainant's bill, which are intended to fix fraud on the defendant, are not, however, overcome by this extraordinary conduct in regard to the invoices. This circumstance, itself, would not warrant the retention of the injunction, when the inference to be drawn from it is positively denied.

The complainant does not allege that it is necessary for him to have a discovery from the defendant, to enable him to sustain his legal defence; and his defence, as far as it is proper for it to be made, is available at law. On a motion to dissolve an injunction on the coming in of the answer, the answer is to be taken as absolutely true. It may, however, impeach itself, and not be entitled to credence in the opinion of the Chancellor; and in that event, the injunction might be retained, though the answer might be full.

Judgment affirmed.