## THOMPSON v. BOYCE.

84  497
104  792
84  497
f111  743
84  497
115  164

Where one purchases land, and has an opportunity to examine it, the contract of sale will not be rescinded or set aside, unless the vendor practiced some fraud or artifice to prevent such examination. But a plea alleging that a certain portion of the land was represented by the vendor to be good hammock land and worth more than $500; that he had been offered that sum for it, but, in

order to reach and examine it, the vendee would have to cross a broad, miry, boggy swamp, which could be crossed only with great difficulty, and she·would get her feet wet if she did not have on water-proof shoes, but that she might rely on his word as to the character of the land: which she did, but his representations as to its character, etc. were false; though perhaps not enough to authorize a rescission of the whole contract, may be sufficient to authorize an abatement of the purchase money as to that portion of .the land.

March 1, 1890.

Vendor and purchaser. Contracts. Pleadings. Fraud. Sales. Abatement. Rescission. Before Judge Bowen. Decatur superior court. May term, 1889.

James M. Boyce petitioned for the foreclosure of a mortgage given to him by Mrs. Thompson to secure the payment of certain notes. She pleaded as follows:

As the sole heir of her mother, she owned a house and lot in Bainbridge. Plaintiff sent his brother, John Boyce, as a decoy, who represented to and persuaded her that plaintiff owned a valuable plantation in Decatur county, and as he was very anxious to move to town, she could make an advantageous trade with him by swapping the house and lot for the farm. At first she thought little of it, but John Boyce continued to persuade her, making most glowing and beautiful descriptions of the plantation.. By his urgent invitation she went to see plaintiff and talked to him about the trade. When she got to his house, he continually praised the place and did all he could to fire her imagination as to its great value and fertility ; thus laying the foundation of the fraud thereafter perpetrated on her. She spent the night at his house, and he dwelt long and eloquently on the merits of the place, but desiring time to think about it, she did not then trade with him. He continued to try to induce her to trade, and persuaded her to pay him another visit and look at his farm. When she was at his house on this visit, he told her that, in addition to the land around the house, there were 50

acres across a branch, 20 of which were fine and valuable hammock land. She asked him to go across with her and let her see it ; they started, and had gone about 150 yards towards the branch when he stopped and told her that if she did not have on water-proof shoes she would get her feet wet, as the branch was a broad, miry, boggy swamp, and could be crossed only with great difficulty, but she might rely on his word as to the character of the land ; and, as an evidence of his perfect good faith and integrity, told her that W. W. Harrell, whom she knew to be a good and responsible man and of good judgment, had offered him $500 cash for the fifty acres east of the house and running along the branch, and had recently told him he could come to him and get that sum whenever he wanted it. Defendant told him that as she could not see the land, she appealed to him as a Christian gentleman not to deceive her, or words to that effect; and he replied that he was a Christian and would not deceive her for the whole world. Thereupon she took his word as true and had the most implicit confidence in him and felt that the trade would be to her advantage, as she could so soon realize money on the fifty acres and have the home left intact, stocked with fruit-trees, cattle, goats and hogs; for, on this visit he told her he would throw in all the stock, consisting of six or seven cattle, a large stock of hogs and goats, and all the plantation tools, and, if she demanded more, some of his household furniture.    With this understanding she returned home, plaintiff agreeing to come to see her for further talk looking to a consummation of the trade.    About April 18, he did come, and as she had grown reluctant to swap off her house and lot, told her that Harrell had just been to see him again and shook a new $500 bill at him, offering it for the 50 acres, but that he refused to take it, telling Harrell he had promised to trade with her but that he presumed Harrell could

buy it of her. He further stated that he had just seen Daniel McGill who had inspected his place and advised him that it was very valuable, worth $8 per acre, and that he ought not to take less. Whereupon, believing him to be honest and truthful, she traded with him, giving him a deed to her house and lot (then worth $1,000) and her notes, and took from him a deed to his place (then worth only $500), which is the land mortgaged by her to secure the notes; he, at the same time, telling her he had a perfect title to said land and would bring up and deliver to her all back deeds. Soon after the trade was made, she approached Harrell, or had him approached, on the subject of selling him the 50 acres, in order that she might get the $500 with which to discount her notes to plaintiff, and was met with surprise by Harrell, who denied the story *in toto*, and said that he would hardly have the barren pine hills comprising the 50 acres as a gift, and she avers this to be true. She then began to suspect, for the first time, that she was the dupe of a scheming, unconscionable man, and investigated the lands and found that there was no hammock land on it; that it was a pine barren, and the timber had been turpentined and nearly all blown down by a storm, and that the land was perfectly sterile. She therefore went to plaintiff and offered to cancel the trade, but he refused to do it. Though she saw and felt the bitter wrong done her, she still desired to avoid a lawsuit and proposed to arbitrate the matter with him, but this also he refused. After the trade, plaintiff went upon the farm and stripped it of all cattle except two old steers and a cow and calf, and afterwards tried to take from her one of the steers and an old cart that were on the place, and which by the terms of the trade belonged to her, and also all the hogs and goats and everything of implements and tools of any value, and dug up and carried away about seventy pear cuttings

growing on the place, and five large pear trees.  He also interfered with her tenant, tried to prevent his paying rent to her, and actually had cord wood cut on the land and collected money for it, long after the trade, and has not accounted for it; thus keeping and exercising control and possession of both places.  He has been in possession and use of her house and lot during this term of years, the rent of which is $50.00, or other like sum; the rent of the farm being not more than $35.00 per annum.  Plaintiff is insolvent.  The prayers are, that the deed from her to plaintiff to the house and lot be set aside; that the mortgage and notes be set aside and cancelled; that the entire trade be annulled and each receive their own property; that the foreclosure of the mortgage be perpetually enjoined, because it will greatly complicate the matters existing between them and embarrass her, in case the court should fail to decree a full cancellation of the trade; and for general relief.

On motion of plaintiff, the court ordered that all that part of the plea in relation to the acts and false representations of plaintiff about the character and value of the lands, be stricken; and this order forms the exception taken.

O. G. Gurley, D. A. Russell and J. D. Talbert, for plaintiff in error.

Donalson & Hawes, contra.

Blandford, Justice.

We think the court below erred in striking the plea offered by the plaintiff in error to the foreclosure of the mortgage in this case.  While the facts therein set up may not have authorized a cancellation of the contract between these parties and a setting aside of the same, yet we think they did, or probably would have authorized, as the jury may have found the facts to be, an abatement or defence to the notes which were sued in this

case by the defendant in error to foreclose the mortgage given as security for the same. We are of the opinion that the allegations in the plea set up as a defénce to the foreclosure, if they are true, would prevent a recovery of so much of the land as was embraced in the tract lying beyond the branch. In the case of *Tindall* v. *Harkinson*, 19 *Ga.* 448, this court decided that " A contract for the sale of land will not be vitiated by a mere false assertion of the vendor as to the quality and value thereof; where the buyer has full opportunity of forming a correct judgment, and is not prevented by the artifice of the seller from making the necessary examination ; especially where the rescission is not applied for within a reasonable time after the injury is discovered." The plea in this case distinctly asserted that the defendant in error represented the land lying beyond the branch to be good hammock land, and that the fifty acres embraced in the tract was worth more than five hundred dollars, and he had been offered that sum for the same ; and that the plaintiff in error was, by the artifice or contrivance of the defendant in error, prevented from examining the land by reason of the fact that the branch was wet and she did not have the proper shoes to go through the same ; and that therefore she relied wholly and exclusively upon the statements of the defendant in error, which statements were false. We think the principle recognized in the case cited is correct, and are willing to adhere to the same. In the case of *Allen* v. *Gibson*, 53 *Ga.* 600, this court held : " That a defendant paid too much for land is no defence to notes given for the purchase money, where he had opportunity of examination, even though he acted upon the representations of the plaintiff and another." To the same effect, see *Collier* v. *Harkness*, 26 *Ga.* 362. See also *Stone* v. *Moore*, 75 *Ga.* 565 ; *Fuller* v. *Buice*, 80 *Ga.* 395. We think the principle to be adduced from

these decisions of this court is, that where one purchases land from another, and has an opportunity to examine it, the contract will not be rescinded or set aside, unless there has been some fraud or artifice practiced by the vendor to prevent such examination. But we think, taking the plea in this case to be true, that both artifice and fraud were practiced by the defendant in error, and while it may not be sufficient to authorize a rescission of the whole contract, it may be sufficient to authorize an abatement of the purchase money as to that portion of the land which the plaintiff in error was not enabled to examine.                          *Judgment reversed.*