# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## OCTOBER TERM, 1903.

---

### SUMMEROUR et al. v. PAPPA.

1. The refusal of the court to sustain a motion to dismiss an action on the ground of a misjoinder of parties defendant is not a proper matter for a ground of a motion for new trial.
2. In the trial of an action for damages for fraud and deceit by which the plaintiff was induced to enter into a written contract, parol evidence is admissible to show false representations made pending the negotiations which resulted in the written contract between the parties.
3. There is no error in refusing a request to charge which is unintelligible.
4. Where the terms of a contract are ambiguous, the intention of the parties is a question for the jury.
5. Where an action is brought for false representations, the question whether the plaintiff could by the exercise of ordinary diligence have discovered the falsity of the representations is for the determination of the jury.

Argued October 31, — Decided November 14, 1903.

Action for deceit. Before Judge Russell. Gwinnett superior court. April 4, 1903.

*W. E. Simmons* and *T. M. Peeples,* for plaintiffs in error.
*S. J. Winn* and *Westmoreland Brothers,* contra.

SIMMONS, C. J. The record discloses that Summerour and Mrs. McClure, residents of Gwinnett county, Georgia, owned 1920 acres of land in Texas, one owning 640 acres and the other 1280. Pappa, a resident of Fulton county, Georgia, owned a farm in Gwinnett county. Summerour and Mrs. McClure wished to exchange their Texas lands for the land owned by Pappa. They sent their agent to Pappa to ascertain if he would make the exchange. The agent reported that in his opinion Pappa would do so. Upon

1

receiving this report, McClure, representing his wife, and Summerour came to Atlanta, and after some negotiations with Pappa the exchange was agreed upon. Pappa claimed that the parties agreed that each should put in his lands at first cost. McClure and Summerour claimed that nothing was said about first cost, but that they told Pappa that the Texas lands had cost $4 per acre and that they would put them in at that price. Each of them, on the trial of the case, swore to this statement. Pappa testified that the agreement was that the parties should put in the lands at first cost, and that he did put in his land at the actual price he had agreed to pay for it, without adding the interest paid on deferred payments. He also testified that McClure and Summerour had stated to him that the Texas land had cost $4 per acre and that they put it in at that price. In this contention he was sustained by the evidence of the agent sent to him by the other parties. The defendants admitted that the contract price of the Texas lands had been but $3.50 per acre, but introduced evidence to show that they had paid only one fifth in cash and had given their promissory notes for the balance, payable in one, two, three, and four years, respectively, with interest, and that the interest added to the original price made the cost to them a little more than $4 per acre. Some time after the exchange, Pappa ascertained that the first cost of the Texas lands to the defendants had been but $3.50 per acre, and he wrote several letters to the other parties, claiming that he was entitled to the difference between what was the first cost of the land and what the first cost had been represented to be. He finally brought his action against Summerour and Mrs. McClure, for damages for the fraud and deceit. The jury returned a verdict in his favor for $960, besides interest and costs. The defendants moved for a new trial, and their motion was overruled by the trial judge. The movants excepted.

1. One of the grounds of the motion complained that, at the conclusion of the evidence, the judge overruled a motion then made to dismiss the case on the ground of a misjoinder of parties defendant. This ground can not be considered, as the matter complained of is not proper for a motion for a new trial. The motion to dismiss was in the nature of a demurrer, and this court has held many times that the overruling of a demurrer to a petition can not be made a ground of a motion for a new trial. It should have

been excepted to in the bill of exceptions directly, or by exceptions pendente lite and error assigned thereon in the bill of exceptions. The bill of exceptions does recite that the motion was made and was overruled by the court, but no effort is made to assign error on the ruling; and even if error had been assigned, the bill of exceptions was tendered more than thirty days after the ruling was made and the court adjourned. There were no exceptions pendente lite.

2. The parties to this suit had entered into a written contract on February 17, 1899, to exchange the Texas lands of the present plaintiffs in error for the land then owned by Pappa. This contract was performed by the delivery of deeds on February 21, 1899. Pappa brought his suit for fraud and deceit, claiming·that in the negotiations for the exchange of the lands the defendants had misrepresented the cost of their Texas lands and had thereby induced him to enter into the contract on terms to which he would not otherwise have consented. On the trial he offered evidence to show the representations made to him as to the cost of the Texas lands. To this evidence objection was made on the ground that it would change and vary the terms of the written contract, and that all prior conversations and negotiations not incorporated in the contract were presumed to have been intentionally omitted. These objections were overruled by the trial judge, and complaint is made of this ruling in the motion for new trial. The ruling of the court was correct. The contract alluded to was declared on. So far as appears, Pappa has no complaint to make of the terms of the contract, but the gist of his action is that he was induced to enter into it by fraud and deceit on the part of the defendants, and was injured by the false and fraudulent representations made to him. These representations brought about the contract, and it would have been impossible for Pappa to have made·out his case without proving the representations and their falsity.

3. Complaint is made that the court refused a request to give in charge the following : " In this case the controlling question is as to what the Texas land exchanged with the plaintiff in part payment for plaintiff's land, and that fact must be determined by you from the evidence. If it appears from the evidence that the defendants purchased said Texas land on a credit, to be paid for in four annual installments, with 8 per cent. interest from the date

of their purchase, then I charge you, as a matter of law, that the actual cost of the same to the defendants was the aggregate sum of the principal and interest they paid for it, provided they paid the purchase-money notes given for it, if they gave such notes, on the maturity thereof." A casual reading of this request will show that it is unintelligible. If it was presented to the judge in this form, it was of course proper for him to refuse to give it in charge ; for neither he nor the jury could understand what was meant by the first part of it.

4. The latter part of the request is intelligible, but seems to be predicated upon a word or words omitted from the first part. Even if the latter part of the request had been separate from the first, we think that the court should not have given it. According to the evidence of both sides, the contract was ambiguous, as was also the representation made as to the cost of the Texas lands. The ambiguity lies in the words "cost" and "first cost," as understood by the plaintiff and defendants. The court therefore could not charge as matter of law as requested. The question of the understanding and intention of the parties should have been, as we presume it was, left to the jury. It was for the jury to determine what was the intention of the defendants when they agreed to put in their lands at first cost and represented that cost to have been $4 per acre, and whether they intended thereby to deceive and defraud the plaintiff. These were questions for the jury, and there was evidence to authorize a finding that they stated that the lands had cost $4 per acre, and knew that the plaintiff understood this representation to mean that they had paid $4 exclusive of interest on deferred payments.

5. It was contended here in the argument that the verdict was contrary to the evidence and unauthorized by law, because it was said that Pappa had had the deeds of the plaintiffs in error to the Texas lands a sufficient length of time to have discovered, by the exercise of ordinary diligence, that the first cost of the lands was but $3.50 per acre and not $4, as represented by the plaintiffs in error ; and that although the representations may have been false, still if Pappa could have discovered their falsity, he was not deceived and could not maintain an action for deceit. The principle of law relied on may be sound ; but upon reading the record we think the facts therein shown are not sufficient to authorize us to

say, as    matter of law, that Pappa was wanting in ordinary dili-
gence in not discovering the real cost of the lands.    The deeds to
the plaintiffs in error do not show the price per acre as such, ·but
do show the number of acres and the aggregate price, so that by
a simple calculation the price per acre may be determined from
them.    The contract for the exchange of the lands was made on
February 17.    This contract finally bound all the parties, except
that it gave each of them time to investigate the validity of the
titles to the lands.    The validity of the titles was the only ques-
tion left open in the contract, and the time given was for the sole
purpose of investigating this.    Pappa testified that he had little or
no recollection as to the deeds of the other parties having been
turned· over to him.    He testified positively, however, that he did
not read the deeds and did not discover the fraud until long after
the contract had been consummated by the exchange of deeds by
the parties conveying the lands to each other.    McClure's recollec-
tion seems to have been almost as indistinct on this point as Pap-
pa's.    He testified that the deeds were turned over to Pappa to
investigate the title.    He first stated that they were turned over
" just after the contract was made; I don't remember the exact
date."    Later in his examination he stated that " these deeds were
turned over to Pappa just a few days after the trade was made, in
Atlanta.    I don't remember the exact date the trade was made.
I think it was four or five days after that, that the deeds were ex-
changed.    The trade was made, I think, on the 17th, and deeds
were exchanged on the 21st."    There does not appear to have been
any other evidence that the deeds of the plaintiffs in error were
turned over to Pappa for the investigation of the titles.    The record
shows positively that the first " trade " or agreement was made on
February 17, and that the parties finally executed and exchanged
their deeds to each other on February 21; so that there were but
four days intervening between the contract and the exchange
of deeds, and it does not appear for how much of this time Pappa
had the deeds which it is claimed he should have examined.    Un-
der this state of facts, this court can not say as matter of law that
he was wanting in diligence in not discovering how much the
plaintiffs in error had paid for their lands.    Questions of negli-
gence and diligence are ordinarily for the determination of the
jury, and we presume that the trial judge submitted this question

to them, as no complaint was made that he failed to do so. The jury having found that Pappa was not negligent as to this matter, we·can not say that their finding was incorrect. If Pappa had discovered, between the signing of the contract and the execution of the deeds of the parties to each other, that the lands had cost the other parties less than they had represented, we could not say even then that it would have been negligence for him to allow the trade to be completed by the delivery of the deeds. He had already signed a contract which bound him to exchange lands if the titles were valid. On discovering the fraud he could have rescinded this contract, or he could have affirmed it and brought his action for damage for the fraud and deceit. See *Bacon* v. *Moody*, 117 *Ga.* 207. *Judgment affirmed. All the Justices concur.*