22478. CLINE *v.* NELSON.

DECIDED FEBRUARY 24, 1933. REHEARING DENIED MARCH 4, 1933.

*Frank W. Bell, S. H. Wiley,* for plaintiff in error.

*Sibley & Allen,* contra.

MACINTYRE, J. R. L. Nelson sued H. T. Cline for $8,500 damages, alleged to be the result of Cline's fraudulently inducing plaintiff to part with his title to certain land. The jury trying the case returned a verdict for $1,000. The questions presented by the record are: (1) whether the trial judge erred in overruling general and special demurrers to the petition, and (2) whether the overruling of defendant's motion for a new trial, based solely upon the usual general grounds, was error. The substance of the petition follows:

■ Defendant has damaged petitioner in the sum of $8,500 by reason of the following facts:

■ On March 15, 1929, defendant "solicited plaintiff for the purchase" of plaintiff's four-hundred-acre tract of land known as the Sandford Place, representing that if plaintiff would sell said place "to the defendant," it, together with defendant's small adjoining place, could be sold by the defendant to a "North Georgia purchaser" for a large dairy farm. Plaintiff told defendant that if these representations were true, he, plaintiff, "would be very reasonable in his price, . . so that defendant could sell his place and this large dairy enterprise could be located there." Thereupon Cline asked plaintiff to "give him an option on said Sandford Place," and plaintiff, believing that said representations of Cline were true and that "the option was necessary to help defendant conclude the sale of defendant's place and bring said large dairy enterprise to this locality, . . did sign said option to said Sandford Place," the same being described in a designated deed record of Baldwin county. Having heard "rumors of a power-development project to be constructed on the Oconee river, . . in said negotiations" plaintiff asked said Cline if "the purchase of the Sandford Place was for the power company development, and Cline said, "No, I swear it is not for the power company." Having no definite "information as to the said development project," and being occupied with his grocery business in Milledgeville, and said Cline "being postmaster and spending a great deal of his time on the streets picking up information here and there, and being generally known to be familiar with the affairs and business and goings-on of Baldwin county, and plaintiff having had previous real-estate dealings with said Cline, and the said Cline having always appeared friendly to plaintiff and knowingly encouraged the confidence of plaintiff in him, plaintiff did not suspect the representations and statements of said Cline to be untrue, and thereupon concluded said sale of said Sandford Place. . ."

■ "On or about June 12, 1929, to his surprise," plaintiff learned that said representations of Cline were "false and fraudulent, and that the purchase of said Sandford Place was not for a dairy enterprise at all, but that the same had been purchased for the Georgia Power Company for its development project," and also that "said Cline had boastingly made statements that he . . had made $5,000 off of the plaintiff in said transaction."

■ "Thereupon . . plaintiff" asked Cline why he had "made said false and fraudulent representations, and why he had lied" about buying plaintiff's land for a dairy; and defendant only laughed.

■ "In said negotiations, and as a part of the consideration thereof," plaintiff told Cline that he, plaintiff, "had expended in improvements on said Sandford Place in the form of wire and the construction of a barn about $1,000," and that Cline "stated to him that these improvements could be removed by plaintiff. However, after the sale had been concluded, . . said Cline told him he could not do so."

■ "Said representations and statements made by said Cline in negotiating for the purchase of said Sandford Place were false and fraudulent," and Cline "knew that the same were false and fraudulent. They were made for the purpose of inducing plaintiff . . to enter into said transaction and sell said land for the purpose of deceiving plaintiff. They did induce him to enter into said transaction and sell said land, and did deceive him therein," and plaintiff was damaged as alleged.

■ "Plaintiff would not have entered into said transaction with said . . Cline, and would not have sold said Sandford Place to him for . . $2500, . . . had he not been deceived and misled by the said . . Cline by the said false and fraudulent representations, and had he not been induced thereby to sell said land. . ."

■ "Said tract of land was worth $25 per acre, or $10,000. . . Georgia Power Company was purchasing land, and did purchase land of a similar character . . at $25 per acre," and in some instances at $50 per acre. Said improvements on said Sandford Place were worth $1,000, said improvements being a three-strand wire fence around 300 acres of land and a large barn forty by sixty feet.

■ On account of "said fraud and false and fraudulent representations of . . said Cline, plaintiff has been damaged by the said Cline in the sum of $8,500."

. That part of the general demurrer to the petition insisted upon by plaintiff in error is substantially as follows: (1) The petition sets out no cause of action. (2) "The petition fails to allege the date and the material provisions of said option, and no copy of same is attached to the petition, or incorporated therein." (3) Plaintiff

fails to allege that when he parted with the title to his land he conveyed it to defendant, or to any other person or corporation having or claiming any rights under said option. Nor is it charged that that plaintiff "was induced, compelled, or procured" to convey said land by any "false statements made to him by defendant at the time the option was executed, or because of the execution of the option itself; nor even that at the time he conveyed his land he was deceived or misled in any manner by defendant." (4) The petition fails to state the name of the person in whose favor the option was originally executed, fails to allege "the name of the person in whose favor a deed was finally executed, fails to allege that the person or corporation to whom, or to which, a conveyance of the land was executed was a holder of said option or claimed any rights under it at the time of the conveyance."

We shall next indicate by paragraph the substance of the special demurrer to the petition. It is as follows: (1) "The petition fails to allege the date and the material terms and provisions of said option, and no copy of the same is attached to the petition or incorporated therein." (2) This paragraph is in the precise language of paragraph 3 of the general demurrer. (3) This paragraph is the same as paragraph 4 of the general demurrer. (4) This paragraph is abandoned. (5) "The description of the land given in paragraph 2 of the petition is insufficient in law." (6) The following words in paragraph 2 of the petition are "immaterial and irrelevant," and should be stricken: "and the said Hugh T. Cline being postmaster and spending a great deal of his time on the streets picking up information here and there, and being generally known to be familiar with affairs and business and goings-on in Baldwin county." (7) Demurs to the following statement in paragraph 2 of the petition: "and thereupon concluded said sale of said Sandford Place," "because it does not appear whether said sale was concluded orally or in writing, who the purchaser was, whether the purchaser was the holder of the option, or claimed any right under it, the date on which sale was concluded; nor is it alleged either in paragraph 2 or elsewhere in the petition that at the time said sale was concluded plaintiff was ignorant of the falsity of the statements and representations which he alleges were made to him by defendant." (8) This paragraph is abandoned. (9) "Demurs to the following language in paragraph 3 of the petition,

and moves to strike it, to wit: 'and also that he, the said . . Cline, had boastingly made statements that he . . had made $5,000 off of the plaintiff in the transaction.'" (10) "The date of the conversation described in paragraph 4 of the petition is not given." (11) "Demurs to the item of damage in the amount of $1,000, referred to in paragraphs 5, 6, 8, and 9, and in paragraph 1, for improvements on the place, because the petition does not disclose that the defendant ever bought said tract of land, that he was ever in possession of it, or that he was ever in a position to deliver said improvements to petitioner; nor does the petition show that the defendant in any way prevented plaintiff from getting said improvements off said land."

The petition substantially alleges that by making the alleged false statements to him under the circumstances stated, the defendant induced plaintiff to give him the option on said land on March 15, 1929. It further appears from the petition that subsequently to the giving of said option, the plaintiff heard rumors that "a power development project" was "to be constructed on the Oconee river;" that plaintiff asked the defendant the direct question as to whether or not the purchase of the Sandford Place was for said development, and that defendant's answer was: "I swear it was not for the power company;" and that, relying upon this assurance, the plaintiff "concluded the sale of the Sandford Place." It also appears from the petition that on June 12, 1929, after said sale was concluded, plaintiff discovered that his place had been disposed of "for the Georgia Power Company for its development project," and not for said dairy enterprise. The petition further substantially avers that the alleged fraud extended through the entire transaction; that the defendant knew that his said representations were false; that said representations were made for the purpose of inducing plaintiff to part with his title for the benefit of the Georgia Power Company; and that plaintiff was misled and deceived by said representations into selling his said land for the use of said company. It will be observed that a large portion of the "general demurrer" is composed of what are properly "special demurrers." Indeed, plaintiff in error appears to recognize this fact, since certain paragraphs of the "general demurrer" are duplicated in the "special demurrer." However, as against what is bona fide a general demurrer, we hold that the petition sets out a cause of action.

We come now to consider the special demurrer. As to paragraph 1 of said demurrer, conceding that the duration of the option should have been pleaded and that it would have been proper for the plaintiff to have pleaded more fully the material parts of the option, provided he had the information that would enable him to do so, it clearly appears from the record that the defendant was already in possession of this information called for by the demurrer, in that the record shows that the written option was made to him and delivered to him, and that he produced it upon the trial and introduced the same in evidence; and the defendant further admitted in his own testimony that he was familiar with its terms. Therefore, assuming that the trial judge erred in not requiring the defendant to give this information on special demurrer, under the facts of the case we think the error was harmless. *Wrightsville & Tennille R. Co.* v. *Vaughan,* 9 *Ga. App.* 371 (5) (71 S. E. 691) ; *Georgia, Fla. & Ala. Ry. Co.* v. *Parsons,* 12 *Ga. App.* 180 (4) (76 S. E. 1063).

Again, conceding that the plaintiff should have given the information elicited by paragraphs 2, 3, and 7 of the special demurrer,—to whom he parted with title to his land, the name of the person to whom the deed was finally executed, whether or not the deed was made to the holder of the option or to one claiming rights under it at the time the deed was made, and the name of the purchaser of the land,—the above-stated principle is likewise applicable, for the reason that the defendant admitted in his testimony that he was present when the deed was executed, discussed the contents of the deed made in compliance with his option, and was one of the witnesses to said deed. The record further shows that the information sought by the above paragraphs of the special demurrer was contained in written documents which the defendant's testimony at the trial admitted were correct, and the defendant further admitted that he had such information at the time of the filing of the special demurrer; and said documents were introduced in evidence without objection. The defendant, therefore, could not have been put to any disadvantage in preparing his defense. Consequently, if there was error, it was harmless. For a clear statement of the principle applied here see *Wrightsville & Tennille R. Co.* v. *Vaughan,* supra.

Paragraph 4 of the special demurrer is abandoned ; paragraph 5 is not meritorious; and the description of the land in paragraph 2 of the petition is sufficient. The language complained of in paragraph

6 of the demurrer should be changed to some such allegation as that the defendant was engaged in buying and selling real estate in Baldwin county and was familiar with business transaction and the establishment of business enterprises in that county. Paragraph 8 of the special demurrer is abandoned.

We think that the following allegation, attacked by paragraph 9 of the special demurrer, was pertinent to illustrate the alleged fraudulent conduct of the defendant: "and that he, the said Cline, had boastingly made statements that he . . had made $5,000 off of the plaintiff in the transaction."

In paragraph 10 of the demurrer it is averred that "the date of the conversation described in paragraph 4 of the petition is not given." Paragraph 4 of the petition alleges: "Thereupon plaintiff approached said defendant and inquired of him why he had made the said false and fraudulent representations to him," etc. Paragraph 3 of the petition alleges that "three months later, on or about June 12, 1929, . . he learned that said representations were false." We hold that, construing these two paragraphs together, the date of the conversation sufficiently appears.

Paragraph 11 of the special demurrer is not meritorious, and for no reason assigned did the trial judge commit reversible error in overruling the general and special demurrers.

The evidence as exhibited by the record in this case is conflicting in regard to the main questions in controversy. The plaintiff testified to the fraud perpetrated upon him by the defendant. The defendant insists very strongly that the testimony of the plaintiff shows that Nelson knew of the falsity of Cline's statement prior to the closing of the transaction, and invokes the following rule laid down in *Griffin* v. *Griffin,* 130 *Ga.* 527 (2) (61 S. E. 16, 16 L. R. A. (N. S.) 937, 14 Ann. Cas. 866) : "One can not be said to be deceived by an alleged false representation when he admits he had knowledge of its falsity." On the question of whether or not Nelson knew the statements of Cline were false before he executed the deed closing the trade, Nelson swore in part: "I kept hearing reports, and didn't know whether they were true or not, and I asked him (Cline) why he lied to me, and he laughed. . . I did not know . . what Cline told me was false. I just got suspicious, and in a friendly way I made that remark to him. He walked off, laughed, but did not deny it. I always joked with him. . . Up to the

time of signing the deed I relied on Mr. Cline's first statement to me that it was being purchased for a north Georgia dairyman for a dairy enterprise. Even after making the jocular remark about his lying to me, I couldn't see anything to the contrary of his [my?] relying on the statement it was going to be used for a dairy farm, because he would not tell me anything: I just couldn't do anything but believe it." Whether or not the plaintiff relied upon the statement of Cline was peculiarly a matter for the jury. They observed the witness and his manner of testifying, and considered all the facts and circumstances of the case. After a careful consideration of the evidence, this court can not hold that the evidence does not support the verdict.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*