### 33178. MILLENDER *v.* LOOPER.

Decided October 6, 1950. Rehearing denied October 28, 1950.

564

*Mitchell & Mitchell,* for plaintiff.

*Pittman, Hodge & Kinney,* for defendant.

SUTTON, C. J. "Parol evidence is inadmissible to add to, take from, or vary a written contract. All the attendant and surrounding circumstances may be proved, and if there is an ambiguity, latent or patent, it may be explained; so if a part of a

contract is reduced to writing (such as a note given in pursuance of a contract), and it is manifest that the writing was not intended to speak the whole contract, then parol evidence is admissible." Code, § 20-704(1). "Parol contemporaneous evidence is inadmissible generally to contradict or vary the terms of a valid written instrument." § 38-501. "If the writing does not purport to contain all the stipulations of the contract, parol evidence shall be admissible to prove other portions thereof not inconsistent with the writing; so collateral undertakings between parties of the same part among themselves would not properly be looked for in the writing." § 38-504. "Where parties have reduced to writing what appears to be a complete and certain agreement, it will, in the absence of fraud, accident, or mistake, be conclusively presumed that the writing contains the entire contract, and parol evidence of prior or contemporaneous representations or statements is inadmissible to add to, take from, or vary the written insrtument." *Bullard* v. *Brewer,* 118 *Ga.* 918(1) (45 S. E. 711). "While a mere receipt for money is always subject to explanation by parol, still if a paper in the form of a receipt is really a contract between the parties and the stipulations agreed upon are sufficiently set forth therein, such paper is subject to the same rules as govern ordinary contracts in writing, and parol evidence is not admissible to contradict or vary the terms or stipulations." *Southern Bell Tel. &c. Co.* v. *Smith,* 129 *Ga.* 558 (59 S. E. 215). Also, see *Graham* v. *Peacock,* 131 *Ga.* 785 (63 S. E. 348). This rule is applicable to a receipt for chattels which is also a contract. "Warehouse receipts should be construed in accordance with the rules applicable to the construction of contracts in general, and especially in accordance with commercial usage." *Citizens & Southern Bank* v. *Union Warehouse & Compress Co.,* 157 *Ga.* 434 (3c) (122 S. E. 327). Also, see *Hyman* v. *Warren County Fertilizer Co.,* 28 *Ga. App.* 687, 688 (113 S. E. 226) ; *Dunagan* v. *Dunagan,* 38 *Ga.* 554, 560; *Barclay* v. *Hopkins,* 59 *Ga.* 562, 565. "A bailment is a delivery of goods or property for the execution of a special object, beneficial either to the bailor or bailee, or both; and upon a contract, express or implied, to carry out this object and dispose of the property in conformity with the purpose of the trust." Code, § 12-101.

The receipts involved in the present case show a delivery of certain goods for the purpose of storage, and clearly show the substance of a contract of bailment. The petition in substance shows an action primarily in trover, under the definition given to such an action in this State, for the value of the goods and based on the failure and refusal of the defendant to deliver the goods upon a demand and presentation of the receipts therefor. Under the foregoing rules the defendant should not be permitted to plead any matter in defense showing the existence of an entirely different contract or relationship from that shown by the written receipts, whereby he might avoid the stipulations and clear implications as to delivery and possession of the goods listed therein, where such matter is apparently capable of proof only by parol evidence, unless it should also appear that the receipts were procured through fraud, accident, or mistake.

There is no issue in the present case as to any accident or mistake. Fraud, however, is alleged in defense. It is well settled that fraud cannot form the basis of an action or a defense thereto, in the absence of any trust or confidential relationship, if it appears that the person relying on the fraud as a basis for the action or in defense thereto had equal and ample opportunity to prevent the happening of the occurrence, and made it possible through a failure to exercise proper diligence. In this connection, one of the headnotes appearing in the case of *Dortic* v. *Dugas*, 55 *Ga.* 484, is as follows: "With equal opportunities for knowing the truth, a party grossly failing to inform himself must take the consequence of his neglect." Also, see *Martin* v. *North Georgia Lumber Co.*, 72 *Ga. App.* 778, 781 (35 S. E. 2d, 270), and the cases there cited. "A warehouseman is a depositary for hire, and is bound only for ordinary diligence; a failure to deliver the goods on demand makes it incumbent on him to show the exercise of ordinary diligence." Code, § 12-405.

All that is actually shown by the plea and answer is that on account of the mode of operation permitted by him as a warehouseman, by the issuance of receipts without verification of the presence of the goods, and by allowing a removal of the goods without a surrender of the receipts, fraud was possible. It was stipulated in the receipts that the warehouseman would exer-

cise ordinary care, the same degree of care already imposed upon him by law, and upon a failure to deliver the goods it is incumbent on him to show the exercise of ordinary diligence. While the Code section in this respect, supra, applies primarily to the exercise of ordinary care for the goods while in the possession of the warehouseman, the same principle would apply in respect to all acts in connection with the contract. Here, admittedly, by the alleged mode of operation, the warehouseman was careless in failing to determine that he ever had possession of all of the goods. It is also apparent from his plea and answer that at all times he had the opportunity, if he desired to take advantage of it, of determining exactly what goods were placed in storage. He cannot allege a conspiracy to defraud where he had every opportunity to shield himself from fraud and failed to exercise the same, by his own admission, it appearing from his allegations that the real basis for the conclusion as to fraud was an opportunity to defraud, brought about by his negligence in the matter. This is no defense and cannot be used as a shield from liability. Under the circumstances alleged, a mere suspicion or conclusion of fraud is not enough.

However, even without fraud, the defendant will be entitled to show by parol evidence on a new trial, in support of any allegations to the same effect which are made and which may be made, any matter which took place after the time the warehouse receipts were issued, if such would show that certain of the goods were actually delivered to the plaintiff or his duly authorized agent, or would show that subsequent to the issuance of the receipts certain of the goods were in the possession of the plaintiff or his duly authorized agent. Such pleadings and evidence in support thereof would show a discharge of the obligation of the defendant under the contract as to these goods. The principle of the parol evidence rule operates only to prevent a showing, in the absence of fraud, accident, or mistake, of any matter in contradiction of the writing which may have taken place at or prior to the execution of the writing.

We are of the opinion that the trial judge erred in overruling the demurrers to paragraphs 10 and 11 of the plea and answer of the defendant, and since it is apparent from the record that all further progress of the case and the final result reached may

have been affected by the ruling in this respect, all further proceedings were nugatory.

*Judgment reversed. Felton and Worrill, JJ., concur.*