## 49780. GOLDMAN v. HART et al.

EVANS, Judge.

John A. Goldman, as plaintiff, sued George W. Hart and Willa L. Hart, as owners, and Ethel Lilley Company, as real estate agent, because of a defective house alleged to have been sold by defendants to plaintiff. The lower court sustained a motion to dismiss as to Ethel Lilley Company, defendant. Plaintiff appeals. *Held:*

1. Plaintiff alleged in his complaint that Mrs. Willibel Duckworth, as agent for the Ethel Lilley Company, represented that the house was in excellent condition generally and there were no problems with the roof, following which plaintiff signed a preliminary contract to purchase, which was to be followed later by a final or "closing" contract. Before the closing contract was signed, both plaintiff and his wife saw patched areas in the ceiling of the house, and called same to the attention of Mrs. Duckworth, who in turn advised plaintiff to inquire about the patched areas of the owners at the time of closing which was to be later during the same day. Plaintiff's complaint also alleged that prior to execution of the closing contract, Mrs. Duckworth advised plaintiff "that any answers she gave concerning the condition of the house were based on information given to her by Mr. and Mrs. Hart," and that "Mr. Hart was a very respected attorney whose integrity could be relied on."

2. Thus, it is made quite plain that before the plaintiff became finally bound by executing the last or "closing" contract, he had personal knowledge that the ceiling had been patched; and that Mrs. Duckworth specifically refused to vouch for the prior statements she had made respecting the house, and told plaintiff that same were based on information given to Mrs. Duckworth by Mr. and Mrs. Hart. She did not specify how much of the information was from Mrs. Hart and how much from Mr. Hart. Mrs. Duckworth did not vouch for Mrs. Hart's reliability, but recommended Mr. Hart as a respected attorney whose integrity could be relied on.

3. Plaintiff contends the preliminary contract bound the parties. If this were correct, it would not be necessary to have a final or "closing" contract. Any knowledge that had come to plaintiff's attention before signing the final or closing contract, which tended to show that the previous representations on which he relied were withdrawn or that he could no longer rely on same, would have been ample justification for his refusing to execute the closing contract. His complaint alleges he had *personal knowledge of the patched condition of the roof,* which should have excited his attention to determine the exact and true condition of the roof. The law is quite plain in this respect. Code § 37-116. "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of parties." Therefore, as plaintiff had actual knowledge of the patched condition of the ceiling, this was sufficient to put him on inquiry as to the true condition of the ceiling, and he is chargeable with notice of its exact and true condition *prior to signing the final or closing contract.* As is held in *Griffin v. Griffin,* 130 Ga. 527 (2) (61 SE 16): "One can not be said to be deceived by an alleged false representation, when he admits that he had knowledge of its falsity." Also see *Cline v. Nelson,* 46 Ga. App. 600, 606 (168 SE 70), in which the above authority is cited and approved. And in *Kidder & Co. v. Clement A. Evans Co.,* 111 Ga. App. 484, 490 (142 SE2d 269), it is held that one can not recover for false representations, if by the exercise

of ordinary diligence he could have discovered the falsity of the representations. Citing *Summerour v. Pappa,* 119 Ga. 1, 5 (45 SE 713); *Scoggins v. Puckett,* 219 Ga. 282 (133 SE2d 17). And in *Doanes v. Nalley Chevrolet Co.,* 105 Ga. App. 846, 848 (125 SE2d 717), it is held: "Misrepresentations are not actionable unless the hearer was justified in relying on them in the exercise of common prudence and diligence."

4. How stands the plaintiff in this case in this regard? His complaint first alleges that he was assured the house was in excellent condition, and *there were no problems with the roof,* and after which, he alleges, with his own eyes he saw that the ceiling was patched. This should have caused him to make a thorough and complete investigation, which he did not do.

5. The essentials of fraud and deceit, where false representations have been made, are: (1) Defendant made the representations. (2) At the time defendant knew they were false. (3) Defendant made them with intent to deceive. (4) Plaintiff relied on such representations. (5) Plaintiff sustained a loss as a result. See *McBurney v. Woodward,* 84 Ga. App. 807, 814 (67 SE2d 398), and *Brown v. Ragsdale Motor Co.,* 65 Ga. App. 727 (3) (16 SE2d 176).

What false representation did Mrs. Duckworth make? She told plaintiff *before he signed the closing contract* that she had no personal knowledge of the house, but her information came from *Mr. and Mrs. Hart, the owners.* What effort did she make to deceive plaintiff? She told him *before the closing to inquire of the owner about the patched areas of the ceiling.* Does this show intent to defraud on her part? She stated that Mr. Hart was a respected attorney whose integrity could be relied on. Was this true or false? Is there anything in the record to suggest that Mr. Hart was other than a respected attorney? Is there anything in the record to suggest that Mr. Hart's integrity could *not* be relied on? Let it be remembered that plaintiff's complaint does not allege that *Mr. Hart* told Mrs. Duckworth the house and the roof were in good condition; but plaintiff alleges she got this information from *Mr. and Mrs. Hart,* and it is not alleged that Mrs. Duckworth ever vouched for the integrity of

Mrs. Hart. But, be that as it may, here was Mrs. Duckworth, *before the closing papers had been signed,* telling plaintiff that she, Mrs. Duckworth, had no personal knowledge as to the condition of the house, but that her information came from Mr. and Mrs. Hart, and since plaintiff was evincing interest in the patched ceiling, she admonished him to make inquiry of the seller about the ceiling "at the closing."

Did Mrs. Duckworth do anything to prevent plaintiff from examining the property so he could discover its actual condition? No, the complaint alleges she urged him to make inquiry of the owner, and under such circumstances no actionable fraud is alleged against her. In *Fenley v. Moody,* 104 Ga. 790, 792 (80 SE 1002), it is held: ". . . where one purchases land from another, and has an opportunity to examine it, the contract will not be rescinded or set aside, unless there has been some fraud or artifice practiced by the vendor to *prevent such examination. . ."* (Emphasis supplied.) Holding to the same effect, see *Thompson v. Boyce,* 84 Ga. 497, 503 (11 SE 353); *Stone v. Moore,* 75 Ga. 565; *Castleberry v. Scandrett,* 20 Ga. 242.

In *Martin v. North Ga. Lbr. Co.,* 72 Ga. App. 778, 781 (35 SE2d 270), it is held: ". . . she had at least an equal opportunity with the defendant to find out how much merchantable sawmill timber she had. And where she had such opportunity and failed to avail herself of it, she can not now complain and maintain a suit for damages based on fraud and deceit."

In *Millender v. Looper,* 82 Ga. App. 563, 569 (61 SE2d 573), it is held: ". . . 'With equal opportunities for knowing the truth, a party grossly failing to inform himself must take the consequence of his neglect.' "

Thus, it appears that Mrs. Duckworth made no false representation prior to closing, but to the contrary, urged the plaintiff to follow up the lead he already had as to the patched ceiling, and make inquiry of the owner "at the closing."

6. The following findings are authorized in this case, to wit: (a) The allegedly false representations made by Mrs. Duckworth were corrected before plaintiff signed the closing papers. (b) Absolutely no fraudulent intent to

deceive was alleged against Mrs. Duckworth. (c) Plaintiff learned of the defective condition of the roof prior to signing the closing papers, and was urged by Mrs. Duckworth to make inquiry respecting same, and yet he signed the closing papers without ever having an examination made of the roof.

7. Complaint here fails to allege facts which would show fraud on the part of Mrs. Duckworth, who acted as agent for the Ethel Lilley Company. The trial judge properly dismissed the complaint as to that defendant.

*Judgment affirmed. Pannell, P. J., Deen, P. J., Clark and Marshall, JJ., concur. Bell, C. J., Quillian, Stolz and Webb, JJ., dissent.*

ARGUED OCTOBER 3, 1974 — DECIDED MARCH 6, 1975 — REHEARING DENIED APRIL 4, 1975 —

*Robert O. Bennett,* for appellant.

*Hodges, Oliver & Duckworth, W. H. Duckworth, Jr., Swift, Currie, McGhee & Hiers, Glover McGhee,* for appellees.

WEBB, Judge, dissenting.

Plaintiff Goldman brought suit against The Ethel Lilley Company and George and Willa Hart seeking to recover damages for defendant's fraud and deceit in the sale of George Hart's house to Goldman. The complaint alleged, inter alia, that Willa Hart acted as attorney in fact for her husband George in the sale of the house; that Lilley Company acted as real estate broker; that on various visits to the house during the negotiation stage Mrs. Hart and Mrs. Duckworth, the broker's agent, "represented to the plaintiff specifically that there were no problems with the roof of the house"; that after the sale it was discovered that the roof leaked in several places; that prior to their misrepresentations to the plaintiff the Harts had been advised by a roofing company that they needed to completely replace the roof; that Mrs. Duckworth, the broker's agent, was an experienced real estate agent who held a mortgage on the house and had reason, opportunity and duty to have acquainted herself

with the condition of the house she was selling; that even if Mrs. Duckworth may not have actually known that her representations were false, they were made with a reckless disregard for the facts with intent to deceive; *that the representations were believed and acted upon by plaintiff.*

The trial court granted the broker's motion to dismiss the complaint as to it for failure to state a claim upon which relief could be granted, and plaintiff appeals. The majority affirms, and I respectfully dissent from that ruling.

1. "In all averments of fraud, . . . the circumstance constituting fraud . . . shall be stated with particularity." CPA § 9(b) (Code Ann. § 81A-109(b)). "The requirement of particularity does not abrogate Rule 8, and it should be harmonized with the general directives in subdivisions (a) and (e) of Rule 8 that the pleadings should contain a 'short and plain statement of the claim or defense' and that each averment should be 'simple, concise and direct.' Rule 9(b) does not require nor make legitimate the pleading of detailed evidentiary matter." 2A Moore's Federal Practice 1929-30, § 9.03. Where fraud is pleaded as contemplated by CPA sections 8 and 9, the general rules as to construction of pleadings apply, including the rules that the pleading will not be construed against the pleader but will be construed so as to do substantial justice, and that a motion to dismiss a complaint for failure to state a claim should not be granted unless the averments in the complaint disclose with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proved in support of the claim. *Neville v. Buckeye Cellulose Corp.,* 118 Ga. App. 439 (164 SE2d 257); *Elsner v. Cathcart Cartage Co.,* 124 Ga. App. 615 (184 SE2d 685); *Continental Investment Corp. v. Cherry,* 124 Ga. App. 863, 865 (2) (186 SE2d 301); *Vickery v. General Finance Corp.,* 126 Ga. App. 403, 404 (2) (190 SE2d 833); *Robinson v. A. Construction Co.,* 130 Ga. App. 56, 57 (2) (202 SE2d 248). Accord, *Cochran v. McCollum,* 233 Ga. 104 (210 SE2d 13). While the statement made in *Mewall Properties & Loan Corp. v. Cutten,* 233 Ga. 291, 294, that "averments of fraud need not be made with specificity or particularity under the Civil Practice Act" is

supportive of this dissent, I nevertheless regard the statement as dictum since fraud was there alleged with particularity, and in any event it is not an altogether accurate statement of the holding in *Cochran,* supra, which is cited as authority for the statement.

2. Appellee broker contends here "that the plaintiff has alleged himself out of court insofar as the appellee-defendant is concerned, and that the trial court did not err in granting the appellee's motion to dismiss." It is urged that paragraphs 5 and 6 of the complaint affirmatively show that the plaintiff did not rely to his detriment upon the truth of any representation made by Mrs. Duckworth, since it is alleged that Mrs. Duckworth stated on one occasion, *prior to closing,* that her representations were based upon information supplied by the Harts.

This contention misses the mark because the rights of the parties to the sales contract were fixed not at the time of closing, but at the time of the execution of the sales contract. Paragraph 6 of the complaint relates to conversations about the roof *on the day of closing,* and paragraph 5 alleges that Mrs. Duckworth "stated on one occasion *following the signing of a purchase contract* on June 10, 1973, that any answers she gave concerning the condition of the house were based on information given to her by Mr. and Mrs. Hart." (Emphasis supplied.) Thus the complaint does not affirmatively show that plaintiff was not relying upon Mrs. Duckworth's representations as being her own *prior to execution of the sales contract,* which is the date plaintiff acted upon the representations to his detriment.

I am unable to follow the distinction drawn by the majority between the "preliminary contract" and closing "contract," and I know of no authority to support the premise that a party to a real estate sales contract is not bound by that contract until it is finally executed. If that premise be correct, then countless cases involving specific performance of such executory sales contracts, and damages for their breach, will have to be stricken from the books. The "closing" is nothing more than the execution of the sales contract; and since, according to the complaint, plaintiff acted upon the misrepresentation in executing

the sales contract, it cannot be said as a matter of law on motion to dismiss that he did not rely upon such misrepresentation to his detriment. He had changed his legal position by executing the sales contract, and regardless of what knowledge he may have gained thereafter he would at least have exposed himself to the hazard of a lawsuit had he refused to close the contract. In my view he was perfectly entitled to protect himself from that hazard, close the contract, and then sue for the fraud which placed him in that position.

I cannot help but conclude that the disposition of this case by the majority smacks of the old demurrer practice. The only issue here is whether the complaint is sufficient to withstand a motion to dismiss for failure to state a claim upon which relief can be granted, and it is my conclusion that, under the rules of pleading set out above, the complaint is sufficient.

I would therefore reverse the judgment of the trial court dismissing the complaint for failure to state a claim.

I am authorized to state that Chief Judge Bell and Judges Quillian and Stolz, concur in this dissent.